WILMER CUTLER PICKERING
HALE AND DORR LLP
SONAL N. MEHTA (SBN 222086)
JESSICA LEWIS (SBN 302467)
LAKSHMI REDDY (SBN 345741)
Sonal.Mehta@wilmerhale.com
Jessica.Lewis@wilmerhale.com
Lakshmi.Reddy@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

ARI HOLTZBLATT (SBN 354631)
Ari.Holtzblatt@wilmerhale.com
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6443

TALBOT CHILD (SBN 359904)
Talbot.Child@wilmerhale.com
50 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (628) 235-1080

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA,**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOHN SUDDETH and SARA PERKINS,<br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>META PLATFORMS, INC., INSTAGRAM, LLC,<br>FACEBOOK OPERATIONS, LLC, and<br>WHATSAPP, LLC,<br>　　　　　　Defendants. | Case No. 3:25-cv-08581-RS<br><br>**DEFENDANTS' NOTICE OF**<br>**MOTION AND MOTION TO**<br>**DISMISS AMENDED COMPLAINT**<br><br>Judge: Hon. Richard Seeborg<br>Courtroom 3, 17th Floor<br>Date: March 12, 2026<br>Time: 1:30 p.m. |

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ...................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................................1

BACKGROUND ......................................................................................................................................4

ARGUMENT............................................................................................................................................6

I.    Plaintiffs' Claims Are Barred By Section 230....................................................................6

    A.    Meta Is An Interactive Computer Service Provider...................................................6

    B.    Plaintiffs' Claims Would Impose Liability On Meta As A Publisher ....................6

    C.    The Ads Were Admittedly Provided By Another Party, And Meta Did Not
          Materially Contribute To Their Unlawfulness........................................................11

II.   Plaintiffs' Claims Fail On The Merits ...............................................................................13

    A.    Plaintiffs Fail To Adequately Allege A Lanham Act Violation (Count I) ............13

    B.    Plaintiffs Fail To Adequately Allege Misappropriation (Counts III and IV) ........15

    C.    Plaintiffs Fail To Adequately Allege A UCL Violation (Count II) .......................17

    D.    Plaintiffs Fail To Adequately Allege A FDUTPA Violation (Count VII).............19

    E.    Plaintiffs Fail To Adequately Allege Breach Of Contract (Count VI) ..................21

    F.    Plaintiffs Fail To Adequately Allege Unjust Enrichment (Count V) ....................22

    G.    Plaintiffs Fail To State a Declaratory Judgment Act Claim (Count VIII) .............23

III.  Dismissal Should Be With Prejudice .................................................................................24

CONCLUSION.......................................................................................................................................24

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ...................................................................................................14

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) .................................................................................17, 18

*Alamilla v. Hain Celestial Group*,
30 F. Supp. 3d 943 (N.D. Cal. 2014) ........................................................................................5

*Astiana v. Hain Celestial Group, Inc.*,
783 F.3d 753 (9th Cir. 2015) ...................................................................................................23

*Barfuss v. Live Nation Entertainment, Inc.*,
2025 WL 1843207 (C.D. Cal. May 14, 2025) ...........................................................................22

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ...............................................................................6, 7, 9, 10, 22

*Cairns v. Franklin Mint Co.*,
107 F. Supp. 2d 1212 (C.D. Cal. 2000) ................................................................................8, 14

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) ...........................................................................................8, 11, 12

*Calise v. Meta Platforms, Inc.*,
No. 21-cv-06186 (N.D. Cal. Sept. 22, 2025) ......................................................................10, 11

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016) ..................................................................................10

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ...........................................................................................12, 13

*Casey v. Florida Coastal School of Law, Inc.*,
2015 WL 10096084 (M.D. Fla. Aug. 11, 2015) ......................................................................20

*Castronuova v. Meta Platforms, Inc.*,
2025 WL 1914860 (N.D. Cal. June 10, 2025) .........................................................................24

*Copart, Inc. v. Sparta Consulting, Inc.*,
339 F. Supp. 3d 959 (E.D. Cal. Sept. 10, 2018) .....................................................................23

*Cross v. Facebook, Inc.*,
14 Cal. App. 5th 190 (2017) ...........................................................................................15, 16, 17

*Damner v. Facebook Inc.*,
    2020 WL 7862706 (N.D. Cal. Dec. 31, 2020) .......................................................10, 11, 21, 22

*Dangaard v. Instagram, LLC*,
    2022 WL 17342198 (N.D. Cal. Nov. 30, 2022) ........................................................................6

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152 (9th Cir. 2012) ...............................................................................................17

*Doe 1 v. Twitter, Inc.*,
    148 F.4th 635 (9th Cir. 2025) ..........................................................................................12, 13

*Doe v. Grindr Inc.*,
    128 F.4th 1148 (9th Cir. 2025) .................................................................................8, 9, 12, 13

*Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001) .................................................................................................15

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ....................................................................................11, 12, 13

*Eidmann v. Walgreen Co.*,
    522 F. Supp. 3d 634 (N.D. Cal. 2021) ...................................................................................17

*Enigma Software Group USA, LLC v. Malwarebytes, Inc.*,
    946 F.3d 1040 (9th Cir. 2019) .................................................................................................8

*Estate of Bride ex rel. Bride v. Yolo Technologies, Inc.*,
    112 F.4th 1168 (9th Cir. 2024) ..........................................................................................6, 12

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ...................................................................................6, 11, 12, 24

*Forrest v. Meta Platforms, Inc*,
    737 F. Supp. 3d 808 (N.D. Cal. 2024) .......................................................................13, 16, 17

*Hart v. Amazon.com, Inc.*,
    191 F. Supp. 3d 809 (N.D. Ill. 2016) ....................................................................................15

*Heartbrand Beef, Inc. v. Lobel's of New York, LLC*,
    2009 WL 311087 (S.D. Tex. Feb. 5, 2009) ...........................................................................15

*Herskowitz v. Apple Inc.*,
    940 F. Supp. 2d 1131 (N.D. Cal. 2013) .................................................................................22

*Herssein Law Group v. Reed Elsevier, Inc.*,
    2014 WL 11370411 (S.D. Fla. 2014) ....................................................................................19

*In re Apple Inc. App Store Simulated Casino-Style Games Litigation*,
    2025 WL 2782591 (N.D. Cal. Sept. 30, 2025) ........................................................................9

*In re Late Fee and Over-Limit Fee Litigation*,
   528 F. Supp. 2d 953 (N.D. Cal. 2007) ...............................................................................23

*Katz-Lacabe v. Oracle America, Inc.*,
   668 F. Supp. 3d 928 (N.D. Cal. 2023) ...............................................................................23

*Kennedy v. Meta Platforms Inc.*,
   2024 WL 4565091 (N.D. Cal. Oct. 23, 2024).....................................................................10

*Key v. Qualcomm Inc.*,
   129 F.4th 1129 (9th Cir. 2025) .........................................................................................18

*King v. Facebook, Inc.*,
   2019 WL 6493968 (N.D. Cal. Dec. 3, 2019).....................................................................10

*King v. Facebook, Inc.*,
   845 F. App'x 691 (9th Cir. 2021) .....................................................................................10

*Klein v. Earth Elements, Inc.*,
   59 Cal. App. 4th 965 (1997) .............................................................................................18

*Kournikova v. General Media Communications Inc.*,
   278 F. Supp. 2d 1111 (C.D. Cal. 2003) .......................................................................13, 14

*Kowalsky v. Hewlett-Packard Co.*,
   771 F. Supp. 2d 1156 (N.D. Cal. 2011) ............................................................................18

*Kroetch v. BAC Home Loan Services*,
   2011 WL 4502350 (N.D. Cal. Sept. 27, 2011) .............................................................21, 22

*Lavigne v. Herbalife, LTD*,
   2019 WL 6721619 (C.D. Cal. Oct. 22, 2019).....................................................................19

*Lepore v. NL Brand Holdings LLC*,
   2017 WL 4712633 (S.D.N.Y. Sept. 28, 2017)....................................................................14

*Librizzi v. Ocwen Loan Services, LLC*,
   120 F. Supp. 3d 1368 (S.D. Fla. 2015) ..........................................................................19, 20

*Lloyd v. Facebook, Inc.*,
   2022 WL 4913347 (N.D. Cal. Oct. 3, 2022).................................................................10, 22

*Loft v. Fuller*,
   408 So.2d 619 (Fla. 4th Dist. 1981).................................................................................15

*Long v. Dorset*,
   369 F. Supp. 3d 939 (N.D. Cal. 2019) ..............................................................................10

*Long v. Dorset*,
   854 F. App'x 861 (9th Cir. 2021) .......................................................................................8

*Margolis v. Apple Inc.*,
   777 F. Supp. 3d 1060 (N.D. Cal. 2025) ....................................................................................18

*Marrache v. Bacardi U.S.A., Inc.*,
   17 F.4th 1084 (11th Cir. 2021) ...............................................................................................20

*Mauro v. General Motors Corp.*,
   2008 WL 2775004 (E.D. Cal., July 15, 2008) ........................................................................19

*Murphy v. Twitter*,
   60 Cal. App. 5th 12 (2021) ........................................................................................................9

*Newcombe v. Adolf Coors Co.*,
   157 F.3d 686 (9th Cir. 1998) ...................................................................................................16

*Noah v. AOL Time Warner, Inc.*,
   261 F. Supp. 2d 532 (E.D. Va. 2003) ......................................................................................11

*O'Connor v. Uber Technologies, Inc.*,
   58 F. Supp. 3d 989 (N.D. Cal. 2014) ......................................................................................23

*Parducci v. Overland Solutions, Inc.*,
   399 F. Supp. 3d 969 (N.D. Cal. 2019) ....................................................................................18

*Parents for Privacy v. Barr*,
   949 F.3d 1210 (9th Cir. 2020) .................................................................................................24

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) ...................................................................................................8

*Planet Green Cartridges, Inc. v. Amazon.com, Inc.*,
   2023 WL 8943219 (C.D. Cal. Dec. 5, 2023) .............................................................................8

*Planet Green Cartridges, Inc. v. Amazon.com, Inc.*,
   2025 WL 869209 (9th Cir. Mar. 20, 2025) ..............................................................................11

*Prager University v. Google LLC*,
   85 Cal. App. 5th 1022 (2022) ....................................................................................................9

*Rigsby v. GoDaddy Inc.*,
   59 F.4th 998 (9th Cir. 2023) ......................................................................................................6

*Rodriguez v. Recovery Performance & Marine, LLC*,
   38 So.3d 178 (Fla. 3d DCA 2010) ...........................................................................................20

*Rollins, Inc. v. Butland*,
   951 So.2d 860 (Fla. Dist. Ct. App. 2006) ................................................................................21

*Shared.com v. Meta Platforms, Inc.*,
   2022 WL 4372349 (N.D. Cal. Sept. 21, 2022) ........................................................................22

*Sikhs for Just., Inc. v. Facebook, Inc.*,
  697 F. App'x 526 (9th Cir. 2017) ...................................................................................24

*Sikhs for Just. "SFJ", Inc. v. Facebook, Inc.*,
  144 F. Supp. 3d 1088 (N.D. Cal. 2015) .............................................................................6

*Thomas v. Generac Power Systems Inc.*,
  2020 WL 9602342 (N.D. Fla. May 8, 2020) ....................................................................21

*Trump v. Twitter, Inc.*,
  602 F. Supp. 3d 1213 (N.D. Cal. 2022) ......................................................................19, 20

*Trump v. Twitter, Inc.*,
  2025 WL 1699850 (9th Cir. 2025) ...................................................................................19

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) .........................................................................................17

*Yeager v. Cingular Wireless LLC*,
  673 F. Supp. 2d 1089 (E.D. Cal. 2009)............................................................................16

*Young v. Facebook, Inc.*,
  2010 WL 4269304 (N.D. Cal. Oct. 25, 2010).............................................................10, 21

*Young v. Meta Platforms, Inc.*,
  2025 WL 2930979 (N.D. Cal. Oct. 15, 2025)...................................................................11

*Zeran v. America Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ...........................................................................................11

**RULES, REGULATIONS, STATUTES**

15 U.S.C.
  § 1114....................................................................................................................................8
  § 1125....................................................................................................................................8
  § 1125(a)(1)(A) ...................................................................................................................13

47 U.S.C.
  § 230...................................................................................................... *passim*
  § 230(c)(1) ...........................................................................................................................6
  § 230(e)(3) ...........................................................................................................................6
  § 230(f)(3)...........................................................................................................................11

Cal. Bus. & Prof. Code § 17200 ...................................................................................... *passim*

Cal. Civ. Code § 3344................................................................................................................15

Fed. R. Civ. P.
  9(b)...........................................................................................................................3, 17, 19
  12(b)(6) .................................................................................................................................1

Fla. Stat.
§ 501.201.............................................................................................................. *passim*
§ 501.212(2).................................................................................................................20

**OTHER AUTHORITIES**

Meta, *Policies* (Sept. 30, 2025), https://perma.cc/5XYZ-RSB3.......................................................9

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT, on March 12, 2026 at 1:30 p.m. in Courtroom 3 of the U.S. District Court for the Northern District of California, San Francisco Division, at 450 Golden Gate Ave., San Francisco, CA, this Motion To Dismiss filed by Defendants Meta Platforms, Inc., Instagram, LLC, Facebook Operations, LLC, and WhatsApp, LLC (collectively "Meta" or "Defendants"), will be heard. Pursuant to Fed. R. Civ. P. 12(b)(6), Meta moves to dismiss the Complaint ("Compl.") in the above-captioned action. Defendants' Motion to Dismiss is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, and accompanying declaration and exhibits.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs allege that criminal "scammers" exploited Meta's advertising tools to create and disseminate advertisements using Plaintiffs' names and likenesses to promote investment-fraud schemes. Users clicking on these ads were allegedly led to group chats on WhatsApp, an encrypted messaging service, where the scammers impersonated Plaintiffs and encouraged users to purchase certain thinly traded China-based securities in furtherance of an alleged "pump-and-dump scheme."[1]

Plaintiffs repeatedly admit that it was the scammers—and not Meta—who used Plaintiffs' likenesses in ads and WhatsApp chats. They also concede that the scammers—not Meta—controlled every aspect of the allegedly deceptive conduct, including by selecting images of Plaintiffs and misleading text for the ads, creating the ad elements, choosing where the ads would appear, choosing to direct users that clicked on the ads to WhatsApp groups, and impersonating Plaintiffs in those WhatsApp groups. And Plaintiffs concede that when Meta received notice of a particular allegedly deceptive ad, Meta removed the ad. As the Complaint itself alleges, it was the scammers who evaded Meta's enforcement efforts by creating new accounts to run new ads. At bottom, then, Plaintiffs seek to hold Meta liable for (1) providing the same neutral ad tools it provides to any advertiser and (2) failing to identify and remove new allegedly deceptive ads that "reappeared under new ad accounts" following Meta's enforcement efforts. Compl. ¶ 33.

---

[1] All emphases added and internal citations omitted throughout, unless otherwise noted.

Plaintiffs' claims are barred by Section 230 of the Communications Decency Act, which prohibits imposing liability on Meta for publishing third-party content. Plaintiffs try, but fail, to circumvent Section 230 in two ways. *First*, they claim that their Lanham Act and misappropriation claims fall into Section 230's intellectual-property exception, despite settled Ninth Circuit precedent holding otherwise. *Second*, they allege that Meta "materially contributed" to the unlawfulness of the scammers' use of their likeness, but support this allegation only by identifying Meta's content-agnostic, neutral advertising tools that allegedly optimized ad components *provided by the scammers*. And it is only those ad components—specifically, the unauthorized use of Plaintiffs' name and likenesses to promote investment fraud—that Plaintiffs contend made the ads unlawful. Accordingly, Section 230 bars Plaintiffs' claims, each of which seeks to impose liability on Meta merely for publishing or not removing content created by third parties using its content-neutral tools. Dismissal with prejudice is appropriate on this basis alone.

Plaintiffs also fail to plausibly allege essential elements of each claim.

*First*, Plaintiffs' Lanham Act claim (Count I) fails because the Complaint does not allege—as would be required to state a false-endorsement claim—that Meta used Plaintiffs' likenesses in a way likely to cause confusion regarding Plaintiffs' endorsement *of Meta itself*. The Lanham Act's false-endorsement provision pertains only to a defendant's use of a person's likeness to falsely suggest that that person endorses the defendant's own goods or services. But here, the entire theory of the Complaint is that the alleged ads and WhatsApp chats falsely suggested that Plaintiffs endorsed certain thinly traded securities—securities to which Meta is not alleged to have any connection.

*Second*, Plaintiffs' misappropriation claims (Counts III and IV) fail for similar reasons. The Complaint does not allege that Meta used Plaintiffs' likenesses to its own advantage, as is required to state a claim under either California or Florida law. Again, the Complaint alleges only that the ads used Plaintiffs' likenesses to falsely suggest they endorsed certain securities, all in furtherance of an investment scheme in which Meta is not alleged to have any interest. Though the Complaint alleges Meta derived advertising revenue from the ads, it does not allege that the use of Plaintiffs' likenesses drove any such revenues and thus does not allege the requisite direct

connection between the use of their likenesses and any benefit to Meta. And Plaintiffs' Florida-law claim is independently barred by their concession that California law applies to all claims by virtue of the choice-of-law provision in Meta's Terms.

*Third*, Plaintiffs fail to state a claim under any prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL") (Count II). Their attempt to state a claim under the UCL's "unlawful" prong is derivative of their other claims and fails for the same reasons as those claims. Their attempt to state a claim under the "fraudulent" prong fails because they have not satisfied Rule 9(b)'s heightened pleading requirement, including because they allege no specifics about the ads on which this claim is based (and Meta could not plausibly have known the contents of the encrypted WhatsApp chats), and fail to allege that they themselves relied on any purported deception. And their attempt to state a claim under the UCL's "unfair" prong fails because the allegedly unfair practices on which that attempt is based overlap entirely with their attempts to assert claims under the unlawful and fraudulent prong, which precludes any claim under the unfair prong under settled Ninth Circuit precedent.

*Fourth*, Plaintiffs' claim under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA") (Count VII), fails because it is precluded by Plaintiffs' concession that California law applies, and, in any event, fails on the merits for essentially the same reasons as the UCL claim.

*Fifth*, Plaintiffs' breach of contract claim (Count VI) fails because they do not identify any enforceable promise by Meta to remove content. Indeed, they do not identify a single specific contractual provision on which this claim is based, and instead reference policies that restrict users'—not Meta's—behavior. They also ignore that Meta's Terms expressly disclaim the purported obligations Plaintiffs seek to enforce.

*Sixth*, Plaintiffs' unjust enrichment claim (Count V) fails because no such cause of action exists under California law and no quasi-contract claim may lie where an express contract covers the subject matter. Here, Meta's Terms expressly disclaim any obligation to remove potentially harmful third-party content, the basis for Plaintiffs' claim. This claim independently fails because

Plaintiffs concede it is derivative of their other claims and thus fails to allege—as it must—any distinct impropriety.

*Finally*, Plaintiffs' claim under the Declaratory Judgment Act (Count VIII) is entirely derivative of their other claims and fails for the same reasons those claims do.

Because Plaintiffs' claims are barred by Section 230 and independently deficient, any attempt to amend the Complaint would be futile. Dismissal should accordingly be with prejudice.

## BACKGROUND

Plaintiffs are two Florida-based financial advisors who allege that their "names, images, voices, and personas" were used without their consent by "scammers [who] purchased and ran sponsored ads on Facebook and Instagram . . . falsely suggesting [Plaintiffs] endorse specific securities." Compl. ¶¶ 1, 2, 38-43. According to the Complaint, these "criminal actors exploited . . . Meta['s ad] tools" by "purchas[ing] sponsored placements through Meta's Ads Manager[ and] upload[ing] creative assets [*e.g.* text, images, or video] falsely depicting or quoting a known advisor." *Id.* ¶¶ 21, 26. The "scammers" configured their advertisements so that users who clicked "the ad were automatically routed to a WhatsApp chat or group administered by the scammers." *Id.* ¶ 26. The "scammers" allegedly then used the WhatsApp chats, which are "end-to-end encrypted," *id.* ¶ 18, to "pressure" others to purchase "specific thinly traded, China-based securities," all in furtherance of an alleged "pump-and-dump scheme." *Id.* ¶¶ 21, 37, 40. Plaintiffs allege their likenesses were used in advertisements and follow-on WhatsApp chats promoting the purchase of stock in Pheton Holdings (Ticker: "PTHL"). *Id.* ¶¶ 32, 37-43. The Complaint, however, purports to identify only two WhatsApp chats using Plaintiffs' likenesses, *id.* ¶¶ 39, 43; the Complaint does not specifically identify any allegedly deceptive ad.

The Complaint does not allege that Meta has any interest in Pheton Holdings, or that Meta itself created the allegedly misleading advertisements. Rather, the Complaint alleges only that Meta "sold, delivered, optimized"—i.e., "us[ed] machine-learning systems [to] maximize reach"—"and monetized" the ads. Compl. ¶¶ 20, 58. The Complaint concedes that it is the advertiser, not Meta, who otherwise "selects an objective . . ., uploads creative assets (text, images,

or video), chooses audience parameters . . ., sets budget and bid strategy, and designates placements across . . . surfaces." *Id.* ¶ 20.

Meta prohibits fraudulent ads. Compl. ¶ 19. Plaintiffs allege they entered "binding agreements" with Meta under Meta's "Terms of Service/Use and incorporated Community Standards, Advertising Standards, and related platform policies" under which Meta purportedly stated it "will" remove violative content. *Id.* ¶ 130. But the Complaint does not identify any policy so stating. Instead, Plaintiffs cite only webpages describing Meta's principles and general approach to content moderation, *id.* ¶¶ 3 n.1, 19 nn.4-6, or providing links to Meta's policies, *id.* ¶ 24 n.7— none constituting part of Meta's Terms or policies. And Meta's policies clearly state only that it "*may* remove content . . . [t]hat attempts to establish a fake persona, pretends to be a famous person, or makes unauthorized use of an image of a famous person in an attempt to scam or defraud." Declaration of Jessica Lewis ("Lewis Decl.") Ex. A at 8; *see also id.* Ex. B at 4 (Meta "may not detect all policy violations"). What is more, Meta's Terms also clarify that these policies are "guidelines outlin[ing] [Meta's] standards regarding the content *you* [the user] post to Facebook and *your* activity on Facebook and other Meta Products"—not Meta's obligations. *Id.* Ex. C at 12; *see also id.* at 12-13 (advertising policies "specify what types of ad content are allowed *by partners who advertise*"). And Meta's Terms are explicit that it "make[s] no guarantees that [its Products] will always be safe, secure, or error-free," "do[es] not control or direct what people and others do or say," and is "not responsible for their actions or conduct (whether online or offline) *or any content they share* (including offensive, inappropriate, obscene, unlawful, and other objectionable content)." *Id.* at 10-11.[2]

The Complaint concedes that Meta did remove ads when "specific impersonation reports were filed," Compl. ¶¶ 33-34, including when Plaintiffs reported ads using their likenesses, *id.* ¶ 44. The scammers then "re-uploaded" similar ads "under new accounts," and "re-named" WhatsApp groups "to evade user reports." *Id.* ¶ 34.

---

[2] Meta's Terms and Community Standards are relied on extensively in the Complaint, *see* Compl. ¶¶ 3, 19, 24, 58, 130, and are therefore incorporated therein by reference. *See Alamilla v. Hain Celestial Grp.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014).

# ARGUMENT

## I.    PLAINTIFFS' CLAIMS ARE BARRED BY SECTION 230

Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," 47 U.S.C. § 230(c)(1), and prohibits liability "under any State or local law that is inconsistent with this section," *id.* § 230(e)(3). "In short, § 230 protects apps and websites which receive content posted by third-party users (i.e., Facebook, Instagram, . . . etc.) from liability" for such content. *Estate of Bride ex rel. Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1175 (9th Cir. 2024). Section 230's "robust" protections "appl[y] to '(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.'" *Id.* (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-1101 (9th Cir. 2009)). Each prong is satisfied here.

### A.    Meta Is An Interactive Computer Service Provider

Meta is an interactive computer service provider. *See, e.g.*, *Dangaard v. Instagram, LLC*, 2022 WL 17342198, at *4 (N.D. Cal. Nov. 30, 2022) (Meta "certainly provide[s] interactive computer services" via Facebook); *Sikhs for Just. "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015) (similar); *see also Rigsby v. GoDaddy Inc.*, 59 F.4th 998, 1007 (9th Cir. 2023) (term "interactive computer service" has a "relatively expansive definition" and "'has been construed broadly to effectuate the statute's speech-protective purpose'").

### B.    Plaintiffs' Claims Would Impose Liability On Meta As A Publisher

Each of Plaintiffs' claims "inherently requires the [C]ourt to treat [Meta] as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1102. A claim satisfies this second prong where it seeks to impose liability for "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Id.*; *see also Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-1171 (9th Cir. 2008) ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."). Here, each claim seeks to hold Meta liable

for "approv[ing], deliver[ing], and optimiz[ing],"—in other words, publishing—advertisements created by third-party "criminal actors" who "exploited . . . Meta['s] tools." Compl. ¶¶ 21-22.

Plaintiffs' claim-specific allegations demonstrate that Section 230's second prong is satisfied for each claim. Plaintiffs' Lanham Act claim (Count I) seeks to hold Meta liable for "publish[ing] and disseminat[ing] paid advertisements and promotional content" containing the alleged impersonating content. Compl. ¶ 78. Plaintiffs' UCL claim (Count II) would impose liability for Meta's "publication and optimization" of unspecified ads and "WhatsApp funnels." *Id*. ¶ 93. Their California and Florida misappropriation claims (Counts III and IV) hang liability on Meta for having allegedly "approved, delivered, optimized, and monetized" the unidentified "impersonation ads and funnels." *Id.* ¶ 106 (California-law claim); *accord id.* ¶¶ 116 (Florida-law claim), 112 (Defendants "published" the scammers' ads). So too with their unjust enrichment claim (Count V). *See id.* ¶ 122 (alleging unjust enrichment "[t]hrough the approval, delivery, optimization, and monetization of paid impersonation advertisements and related click-to-WhatsApp funnels"). Their breach of contract claim (Count VI) similarly would impose liability on Meta for allegedly "approving, delivering, optimizing, and monetizing" and "failing to remove or timely restrict" the unspecified ads and related WhatsApp funnels. *Id.* ¶ 131. And their FDUTPA claim is no different. *See id.* ¶ 139(a)-(b) ("approving, delivering, optimizing, and monetizing paid advertisements that impersonated Florida Subclass members"; "publishing and amplifying promotional content"). Indeed, even the remedies Plaintiffs demand for their claims make clear that they seek to treat Meta as the publisher of the third-party ads. Plaintiffs request that Meta be ordered to "cease publishing, delivering, or optimizing any advertisement or content that uses a financial professional's" likeness without consent, monitor "financial-promotion ads," use "filters" for particular ads that use "professional credentials," establish a "notice-and-takedown" procedure for such ads, and issue "corrective notices." *Id.* ¶¶ 85, 97, 109, 118, 135, 143, 151. In sum, each claim hinges on Plaintiffs' disagreement with Meta's "deci[sion] whether to publish or to withdraw from publication" the alleged impersonation ads, and thus each requires treating Meta as the publisher of those ads. *Barnes*, 570 F.3d at 1102.

Plaintiffs incorrectly assert their Lanham Act and misappropriation claims (Counts I, III, IV) "fall within intellectual-property regimes not immunized" by Section 230. Compl. ¶ 58. "[T]he intellectual property exception contained in § 230(e)(2) . . . does not apply to false advertising claims brought under § 1125(a) of the Lanham Act, unless the claim itself involves intellectual property." *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1053 (9th Cir. 2019). And in that regard, the Ninth Circuit has clearly delineated between 15 U.S.C. § 1114, which concerns use of intellectual property, and § 1125 (at issue here), which does not. *Id.* at 1053; *see also Planet Green Cartridges, Inc. v. Amazon.com, Inc.*, 2023 WL 8943219, at *5 (C.D. Cal. Dec. 5, 2023), *aff'd*, 2025 WL 869209 (9th Cir. 2025) (holding that Section 230 bars Lanham Act false association claim). That makes sense, because what makes the use of a plaintiff's likeness wrongful in the context of a false association or false endorsement claim is "not [the] use of an image or name,"—i.e., not the use of any intellectual property—but the creation of a false suggestion of association or endorsement, *Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1214 (C.D. Cal. 2000). Such claims thus sound in false advertising, not intellectual property. And it is well settled that Section 230's intellectual property exception is limited to *federal* intellectual property rights, thus there is no exception to Section 230 for state-law "right of publicity" claims. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1119 & n.5 (9th Cir. 2007). Accordingly, "not only are [Plaintiffs'] state tort claims unrelated to intellectual property, but the exception does not even apply to state laws protecting intellectual property." *Long v. Dorset*, 854 F. App'x 861, 865 n.4 (9th Cir. 2021).

Nor can Plaintiffs evade Section 230 by arguing that their breach of contract claim (Count VI)—or any other claim invoking a similar theory of liability, like the UCL or FDUTPA claims—is based on Meta's "promises—including its Terms, Community Standards, and Advertising Policies." Compl. ¶ 58. That is because Plaintiffs have not plausibly alleged any enforceable promises. Section 230 does not bar claims seeking to enforce contractual or quasi-contractual promises *only* where a defendant is plausibly alleged to have "manifested its intent to be legally obligated to" take certain content-moderation actions. *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 743 (9th Cir. 2024). Thus, to avoid Section 230, a claim must target a "specific promise or

representation," not a "'failure to take certain moderation actions.'" *Doe v. Grindr Inc.*, 128 F.4th 1148, 1154 (9th Cir. 2025), *cert. denied* No. 24-1202 (U.S. Oct. 14, 2025). A "general . . . description of [a defendant's] moderation policy" does not create enforceable contract obligations. *Id.*; *accord Barnes*, 570 F.3d at 1108 ("general monitoring policy" does not create enforceable contract obligations). *See also Prager Univ. v. Google LLC*, 85 Cal. App. 5th 1022, 1036 (2022) (citing *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 29-30 (2021)) (Section 230 "foreclose[s] liability where plaintiffs have identified no enforceable promise allegedly breached").[3]

Here, Section 230 bars Plaintiffs' claims for the same reason Plaintiffs failed to state a viable breach-of-contract claim, *see infra* pp. 21-22: The Complaint does not identify a single specific contractual promise that Meta allegedly breached. Plaintiffs allege Meta's "Terms of Service/Use and incorporated Community Standards, Advertising Standards, and related platform policies . . . represent[] that [Meta] will remove or restrict content, accounts, and advertisements that violate" rules against impersonal and fraud, but they do not cite a single contractual provision making any such promise. Compl. ¶ 130; *see also id.* ¶¶ 3, 19, 24, 58, 130. Instead, Plaintiffs cite to webpages generally describing and providing links to Meta's many content-moderation policies. *E.g.*, *id.* ¶¶ 3 n.1, 19 nn.5-6, 24 n.7. But "a description of [a] moderation policy" is "not a specific promise." *Grindr*, 128 F.4th at 1154. Moreover, these pages—also unquoted by the Complaint—contain only broad, aspirational statements that Meta, for example, "take[s] action" on content that violates its policies.[4] And its actual policies grant Meta the authority and discretion to remove violative content, but they do not commit Meta to do so—such a commitment would be impractical given the volume of content on Meta's services. Meta's Community Standards, for example, state only that Meta "*may* remove content . . . [that] makes unauthorized use of an image of a famous

---

[3] Judge Davila recently certified for interlocutory review a decision observing that *Calise* "suggest[s] that Section 230 applies when a duty requires monitoring *even if* that duty does not spring from a defendant's status or conduct as a publisher," that is, even if that duty derives from an enforceable promise. *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 2025 WL 2782591, at *21 (N.D. Cal. Sept. 30, 2025). Under that reasoning, Section 230 applies here regardless of whether Plaintiffs plausibly alleged the existence of an enforceable promise because Plaintiffs' claims are premised on Meta's alleged failure to remove content, and "for [Meta] to take down third-party content," it would have to "monitor the third-party content." *Id.*

[4] Meta, *Policies*, (Sept. 30, 2025), https://perma.cc/5XYZ-RSB3 (cited at Compl. ¶ 24 & n.7).

person in an attempt to scam or defraud." Lewis Decl. Ex. A at 8. "[M]erely stating that Facebook does not allow users to post harmful content and that they will remove [such content]" is "mere[ly] 'a general monitoring policy'" insufficient to evade Section 230. *Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *9 (N.D. Cal. Oct. 3, 2022); *accord Kennedy v. Meta Platforms Inc.*, 2024 WL 4565091, at *3 (N.D. Cal. Oct. 23, 2024) (similar). And as Meta's Terms of Service make clear, Meta's Community Standards and Advertising Policies—which the Complaint references but does not cite or quote—create obligations on behalf of *users*, not Meta. The Community Standards are "guidelines outlin[ing] [Meta's] standards regarding the content *you* [the user] post to Facebook and *your* activity on Facebook and other Meta Products"—not Meta's obligations. Lewis Decl. Ex. C at 12. The Advertising Policies similarly "apply to partners who advertise" and "specify what types of ad content are allowed *by partners who advertise*." *Id.* at 12-13. Policies such as those that "place restrictions on users' behavior, they do not create affirmative obligations" on behalf of Meta. *Young v. Facebook, Inc.*, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010); *accord Long v. Dorset*, 369 F. Supp. 3d 939, 948 (N.D. Cal. 2019) (same); *King v. Facebook, Inc.*, 2019 WL 6493968, at *2 (N.D. Cal. Dec. 3, 2019) (same), *aff'd*, 845 F. App'x 691 (9th Cir. 2021); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016) (same).[5]

Not only can Plaintiffs not identify any enforceable promise Meta allegedly breached, Meta's Terms expressly "disclaim any intention to be bound" to remove or restrict third-party content. *Barnes*, 570 F.3d at 1108. Meta's Terms are explicit that it "make[s] no guarantees that [its Products] will always be safe, secure, or error-free," "do[es] not control or direct what people and others do or say," and is "not responsible for their actions or conduct (whether online or offline) *or any content they share* (including offensive, inappropriate, obscene, unlawful, and other objectionable content)." Lewis Decl. Ex. C at 10-11; *id.* Ex. B at 4 (Meta "may not detect all policy violations"). That language "makes clear that Facebook [does] *not* promise to safeguard" the

---

[5] Judge White's recent decision in *Calise v. Meta Platforms, Inc.*, No. 21-cv-06186 (N.D. Cal. Sept. 22, 2025), Dkt. 62, is not to the contrary. There, among other distinctions, the Court considered a prior version of Meta's Terms, which stated that Meta "*will* take appropriate action" not that it "may," and language in a prior version of Meta's Community Standards stating "[Meta] remove[s] content," without clarifying that it merely "aim[s]" to. *Id.* at 1-2. The Court relied on this different language in rejecting Meta's argument that it had expressly disclaimed any obligation to remove third-party content. *Id.* at 6-7.

platform. *Damner v. Facebook Inc.*, 2020 WL 7862706, at \*7 (N.D. Cal. Dec. 31, 2020) (dismissing breach of contract claim on this basis); *accord Young v. Meta Platforms, Inc.*, 2025 WL 2930979, at \*2-\*3 (N.D. Cal. Oct. 15, 2025) (similar). And Meta's "disclaimer of any obligation to enforce" the general content moderation policies scattered across the Complaint "is perfectly in line with the evident Congressional intent of § 230, namely to ensure that service providers are not held responsible for content provided by third parties," particularly given the incredible volume of such content. *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 545 (E.D. Va. 2003); *Zeran v. America Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997). Given this express disclaimer, Plaintiffs have not plausibly alleged that Meta "manifested its intent to be legally obligated to … combat scam advertisements." *Calise*, 103 F.4th at 743. Plaintiffs' claims thus seek to hold Meta liable not as a promisor, but as a publisher that allegedly failed to moderate third-party content, and therefore satisfy Section 230(c)(1)'s second prong.[6]

**C.    The Ads Were Admittedly Provided By Another Party, And Meta Did Not Materially Contribute To Their Unlawfulness**

Section 230's third prong is satisfied because Plaintiffs do not plausibly allege Meta was "responsible, in whole or in part, for the creation or development of" any unlawful content in the unspecified third-party ads and WhatsApp chats. 47 U.S.C. § 230(f)(3). A defendant "develop[s]" content by "'materially contributing to its alleged unlawfulness.'" *Planet Green Cartridges, Inc. v. Amazon.com, Inc.*, 2025 WL 869209, at \*1 (9th Cir. Mar. 20, 2025). The "crucial distinction" is "'between, on the one hand, taking actions (traditional to publishers) that are necessary to the display of unwelcome and actionable content"—which falls squarely within Section 230's protections—"and, on the other hand, responsibility for what makes the displayed content illegal or actionable.'" *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1099 (9th Cir. 2019).

---

[6] Again, Judge White's recent decision in *Calise* is not to the contrary. Judge White did not specifically address whether the language relied on here disclaimed any intent to be bound to remove alleged scam ads. Rather, Judge White addressed only the applicability of a limitation of liability contained in the same section of Meta's Terms but not relied upon in this Motion. *See Calise*, No. 21-cv-06186, at 7-8. Meta is not here seeking to contractually limit its liability, but to demonstrate that it has not expressed an intent to be bound to remove alleged scam ads and thus Plaintiffs' claims premised on Meta's alleged failure to remove such ads are barred by Section 230.

Allegations amounting to nothing more than that Meta "merely . . . augment[ed] the content generally," *Roommates*, 521 F.3d at 1167-1168, or "facilitated the expression of information by individual users," *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003), do not establish material contribution. Nor is it enough to allege that Meta "provid[ed] tools" used by "third parties for unlawful purposes." *Calise*, 103 F.4th at 745. A provider also does not materially contribute to the unlawfulness of content by using features or functions like algorithms to filter, recommend, or target content to other users, as those are tools "meant to facilitate the communication and content of others,'" and are "not content in and of themselves." *Grindr*, 128 F.4th at 1153; *see also Estate of Bride*, 112 F.4th at 1181 ("automated processes . . . in the site's algorithm were not . . . content"). Section 230 thus provides "immun[ity] from liability for the alleged third-party abuses of" a defendant's neutral, generally available ad tools. *Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 646 (9th Cir. 2025).

Here, Plaintiffs repeatedly make clear that what made the "impersonation" ads allegedly unlawful was that the ads "used the names, images, voices, and personas of" Plaintiffs. Compl. ¶ 21; *see also id.* ¶¶ 31-32. But Plaintiffs nowhere allege that Meta contributed, materially or otherwise, to the ads' use of Plaintiffs' likenesses. Indeed, Plaintiffs concede that it was the third-party "advertiser[s]" who controlled every aspect of the ads relevant here: "upload[ing] creative assets (text, images, or video)," "select[ing] an objective," including "click-to-WhatsApp," "choos[ing] audience parameters . . ., set[ing] budget and bid strategy, and designate[ing]" where on Meta's platforms the ads will appear. *Id.* ¶ 20; *accord id.* ¶ 26. Meta's alleged contributions, in contrast, are limited to its provision of content-neutral "tools" allegedly used by the scammers (like "creative templates, automated ad-copy tools, 'lookalike'/interest targeting, and click-to-WhatsApp placements"), its designation of ads as "Sponsored," and its alleged under-enforcement of its content moderation policies. *Id.* ¶ 58. None of these allegations, even if true, amount to material contribution. Meta's content-neutral advertising tools are not responsible for the impersonation ads' use of Plaintiffs' likenesses; rather, Plaintiffs concede that "criminal actors exploited" Meta's content-agnostic tools "to run paid impersonation advertisements." *Id.* ¶ 21. As the Ninth Circuit recognized in *Calise*, Meta's ad tools are "on their face, neutral. They are

allegedly used for unlawful purposes, but that does not result from Meta's efforts." 103 F.4th at 745. Although Meta's advertising tools "facilitated the expression of information"—or in Plaintiff's words, "transformed and operationalized the deception at scale," Compl. ¶ 58—"the selection of the content was left exclusively to the [advertiser]." *Carafano*, 339 F.3d at 1124 (providing content-neutral tools to create a profile does not make a website a "content provider" where "no profile has any content until a user actively creates it").

*Forrest v. Meta Platforms, Inc.*, is not to the contrary. There, the court concluded the plaintiff's allegations "present[ed] a factual dispute" as to whether Meta's advertising "tools themselves contributed to the *content* of the ads, including to the aspects of the content that are allegedly illegal." 737 F. Supp. 3d 808, 818 (N.D. Cal. 2024). Not so here, where the Complaint is clear that the allegedly illegal content—the use of Plaintiffs' likenesses—was provided by the "advertiser[s]," not Meta. *See* Compl. ¶ 26. As the Ninth Circuit has reaffirmed post-*Forrest,* third-party misuse of "content-neutral" features like Meta's advertising tools does not strip Section 230's protections. *Grindr*, 128 F.4th at 1152-1153 (quoting *Dyroff*, 934 F.3d at 1098); *Doe 1*, 148 F.4th at 646.

The third prong is thus satisfied: Plaintiffs allege only that Meta provided "neutral features" "meant to facilitate the communication and content of others," *Grindr*, 128 F.4th at 1153, which the scammers allegedly misused for unlawful purposes. Because each of their claims seeks to hold Meta liable as a publisher of third-party content, Section 230 requires that the FAC be dismissed.

## II.    PLAINTIFFS' CLAIMS FAIL ON THE MERITS

### A.    Plaintiffs Fail To Adequately Allege A Lanham Act Violation (Count I)

Plaintiffs' Lanham Act claim fails because the Complaint does not allege that Meta used Plaintiffs' likenesses in a way likely to confuse consumers regarding Plaintiffs' endorsement of Meta's own goods or services. That is fatal. The Lanham Act, in relevant part, provides liability only for "[a]ny person who . . . uses in commerce any word, term, name, symbol, or device" that "is likely to cause confusion . . . as to the . . . sponsorship[] or approval ***of his or her goods, services, or commercial activities***." 15 U.S.C. § 1125(a)(1)(A). The Act thus precludes only uses of a plaintiff's likeness that "suggest[] that plaintiff sponsored or approved ***the defendant's***

product" or service. *Kournikova v. General Media Commc'ns Inc.*, 278 F. Supp. 2d 1111, 1120 (C.D. Cal. 2003). And the Act's false endorsement provision prohibits "only false endorsement, not mere use of an image or name." *Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1214 (C.D. Cal. 2000). Meta thus may not be held liable simply for displaying on its platform third-party ads using Plaintiffs' likenesses. Rather, it must have used Plaintiffs' likenesses to falsely suggest Plaintiffs' endorsement of its own goods or services.[7]

But here, the Complaint alleges only that third-party scammers used Plaintiffs' likenesses to suggest their endorsement of certain stocks, not Meta. As alleged, "scammers" "exploited" Meta's advertising tools by "upload[ing] creative assets (text, images, or video) . . . us[ing] the names, images, voices, and personas of financial professionals and advisors." Compl. ¶¶ 20-21; *accord id.* ¶ 26 ("scammers . . . uploaded creative assets falsely depicting or quoting a known advisor"). And, according to the Complaint, "[t]hese ads deceptively suggested that the impersonated professionals endorsed" *not* Meta or its services but "specific thinly traded, China-based securities." *Id.* ¶ 21; *accord id.* ¶ 2 (the ads "falsely suggest[ed]" that financial professionals "endorse[d] specific securities"); ¶ 37 (the ads "falsely suggested [plaintiffs] endorsed Pheton"); ¶ 78 (the ads "falsely suggest[ed] that Plaintiffs . . . sponsored, endorsed, approved, were affiliated

---

[7] To the extent Plaintiffs attempt to plead a contributory infringement claim, that theory does not appear to apply to false endorsement claims. *See Lepore v. NL Brand Holdings LLC*, 2017 WL 4712633, at *3 (S.D.N.Y. Sept. 28, 2017) ("[T]his Court is unaware of . . . a single case in which a court has found a defendant indirectly liable for false endorsement based on the acts of a third party."). But even if it did, Plaintiffs have not stated a claim. Contributory liability requires "knowledge" of the direct infringement, and that the defendant "materially contribute to the infringing activity." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020, 1022 (9th Cir. 2001). In the "online context," knowledge requires that defendant had "actual knowledge of specific acts of infringement" and "failed to remove the material." *Id.* at 1021-1022. Here, the Complaint admits that Meta removed the specific allegedly infringing ads of which it had actual knowledge. Compl. ¶¶ 33-34. And while the Complaint alleges new ads "reappeared under new ad accounts," *id.* at 33, there is no allegation that Meta had knowledge of those ads. There also is no plausible allegation that Meta materially contributed to the alleged infringement. Again, unlike in the copyright and trademark contexts, the Lanham Act's false-endorsement provision "prohibits only false endorsement, not mere use of an image or name." *Cairns*, 107 F. Supp. 2d at 1214. Thus, simply providing "the site and facilities" for direct infringement, *A&M Records*, 239 F.3d at 1022, does not materially contribute to any false endorsement. And there is no plausible allegation here that Meta's mere provision of neutral advertising tools contributed to any "suggest[ion] that plaintiff[s] sponsored or approved" Pheton Holdings or any other securities, *Kournikova*, 278 F. Supp. 2d at 1120. *See supra* pp. 11-13.

with, or endorsed the promoted investment opportunities"); ¶ 93 (the ads "were likely to deceive reasonable consumers by falsely representing that real, licensed financial professionals sponsored or approved the promoted securities"). Meta thus cannot be held liable for false endorsement because it did not use Plaintiffs' likenesses to suggest Plaintiffs' endorsement of Meta's own goods or services.[8]

### B.    Plaintiffs Fail To Adequately Allege Misappropriation (Counts III and IV)

Plaintiffs purport to plead misappropriation claims under both California and Florida statutory law as well as California common law. As the Complaint itself acknowledges, however, California law applies to all claims pursuant to the choice-of-law provision in the applicable user agreements. Compl. ¶¶ 69-74. In any event, the state's laws are similar and the Complaint fails to state a claim under either. As under the Lanham Act, Plaintiffs cannot state a misappropriation claim because the Complaint concedes that third-party scammers used Plaintiffs' likenesses to promote certain stocks in furtherance of a fraudulent investment scheme that benefitted those third parties, not Meta.

To state a misappropriation claim under California common law, a plaintiff must allege (1) "the defendant's use of [their] identity"; (2) that such use was "to defendant's advantage, commercially or otherwise"; (3) the "lack of consent"; and (4) "resulting injury." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). The second prong requires that the defendant "'commercially exploited'" the plaintiff's likeness by using the plaintiff's likeness in a way "aimed at obtaining a commercial advantage" for the defendant. *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 210-211 (2017). California Civil Code § 3344 demands the same elements, plus that the defendant's use was "knowing" and that there be a "direct connection between the alleged

---

[8] To the extent Plaintiffs allege that Meta's mere dissemination of the ads somehow suggested Plaintiffs' endorsement of Meta, that theory would fail. *See Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 819 (N.D. Ill. 2016) (sale on Amazon of allegedly counterfeit versions of plaintiff's book did not "imply that Plaintiff has endorsed Amazon or has any specific affiliation with Amazon"); *Heartbrand Beef, Inc. v. Lobel's of New York, LLC*, 2009 WL 311087, at *3 (S.D. Tex. Feb. 5, 2009) (holding in analogous false-designation-of-origin context that Yahoo!'s placement of a third-party ad did not "ma[k]e a statement about *Yahoo!'s* products or services"). Any such theory would also be inconsistent with Plaintiffs' entire theory of the case—which is that the ads were deceptive because they suggested Plaintiffs' endorsement of certain securities.

use and the commercial purpose." *Downing*, 265 F.3d at 1001; *see also Loft v. Fuller*, 408 So.2d 619, 622 (Fla. 4th Dist. 1981) (Florida misappropriation law requires "the unauthorized use of a name to directly promote the product or service of the publisher.").

Here, the Complaint alleges that the use of Plaintiffs' likenesses was aimed at advantaging third-party scammers, not Meta. The Complaint alleges that Plaintiffs' likenesses were used to "induce rapid trading activity" in furtherance of a "pump-and-dump scheme" that Meta is not alleged to have any interest in. Compl. ¶¶ 27, 40. According to Plaintiffs, their likenesses were used for the purpose of capitalizing on their "professional goodwill" to lend credibility to the scammers' investment-related ads, *id.* ¶ 100—a purpose "aimed" exclusively at obtaining an advantage for the scammers, not Meta, through the alleged investment-fraud scheme, *Cross*, 14 Cal. App. 5th at 210. While the Complaint alleges that Meta "generat[ed] substantial advertising revenues" from "deliver[ing] the[] impersonation ads," Compl. ¶ 6, that does not plausibly allege Meta's use of Plaintiffs' likenesses for the purpose of obtaining an advantage for itself because "the benefit [Meta] received—payment for the advertising space—was unrelated to the contents of the advertisement." *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 693 (9th Cir. 1998). Indeed, the Complaint does not even allege that the use of Plaintiffs' likeness resulted in advertising revenue that Meta would not have earned absent to the use of Plaintiffs' likenesses, let alone that the purpose their likenesses were used was to increase ad revenue. Nor could it. As Plaintiffs allege, the "commercial value" associated with their "professional personas" lies in lending "credibility" to investment advice, not their notoriety or ability to drive advertising engagement. Compl. ¶¶ 57, 100. It is thus implausible that Meta "published [Plaintiffs' likenesses] for purposes [of] taking advantage of [their] reputation[s]," which have no relation to advertising revenue. *Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1100 (E.D. Cal. 2009). That precludes Plaintiffs' claim. *Id.*

*Forrest* does not suggest otherwise, as it is both distinguishable and flawed. There, the court found that the plaintiff—a "well-known public figure"—plausibly alleged that third-party ads featuring his likeness "generate[d] engagement" such that "Meta profited *more* from ads that included his likeness than it would have if the ads had not." 737 F. Supp. 3d at 819-820. Here,

where the Complaint concedes that Plaintiffs are not "nationally recognized figures," Compl. ¶ 36, there is no plausible inference that Meta derived more advertising revenue from ads featuring Plaintiffs' likenesses than it would have from ads featuring, for example, a fictional financial advisor. And, in any event, *Forrest*'s reasoning is faulty as the court there asked only whether Meta did obtain a benefit from the ads, not—as required—whether such a benefit was the "aim" of the use of the plaintiff's likeness, *Cross*, 14 Cal. App. 5th at 210. Here, as discussed, there is no plausible inference that the use of Plaintiffs' likenesses was aimed at increasing Meta's ad revenue. The Complaint thus fails to allege the requisite nexus between the use of Plaintiffs' likenesses and any benefit to Meta.

### C.    Plaintiffs Fail To Adequately Allege A UCL Violation (Count II)

Plaintiffs also fail to state a claim under California's UCL, which prohibits "'acts or practices which are unlawful, or unfair, or fraudulent.'" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). As with all of the claims, Plaintiffs seek to hold Meta liable for its alleged "publication and optimization" of unspecified ads and encrypted WhatsApp chats and for failing to prevent similar ads from "reappear[ing]" after Meta received notice of and removed (again, unspecified) alleged "impersonation ads." Compl. ¶¶ 90-94. That does not support a claim under any of the UCL's three prongs.

*First*, Plaintiffs fail to state a UCL claim under the "unlawful" prong because they fail to state any "predicate" violation, so their UCL "'claim also fails.'" *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 674 (N.D. Cal. 2021); *accord. Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) ("To be 'unlawful' under the UCL, the [conduct] must violate another 'borrowed' law."). Their claim under the unlawful prong fails because, as discussed throughout this Motion, they fail to state any claim for relief.

*Second*, Plaintiffs fail to state a claim under the "fraudulent" prong of the UCL, which they premised on Meta's alleged "publication and optimization of imposter professional endorsements and scripted WhatsApp funnels." Compl. ¶ 93. A claim under the fraud prong must satisfy Rule 9(b)'s heightened standard by "alleg[ing] 'the particular circumstances surrounding [the] representations.'" *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 563-564 (N.D. Cal. 2019). Here, the

Complaint does not identify a single allegedly deceptive advertisement, thus plainly failing to allege "the time, place, and specific content" of any such ad. *Id.* at 552. The WhatsApp chats also cannot support Plaintiffs' claim, because the Complaint does not plausibly allege Meta had knowledge of the allegedly deceptive contents of the chats, which are end-to-end encrypted, Compl. ¶ 18. Meta cannot be held liable under the UCL for the "'unwitting' and 'unintentional' distribution" of allegedly deceptive statements in messages it could not even read. *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 970 (1997); *see also Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1161 (N.D. Cal. 2011) (stating that "courts have been unwilling to impose liability under the fraudulent prong of the UCL" where defendants "lacked knowledge" of the alleged fraud). And Plaintiffs' fraud-based claim also independently fails because they do not allege their own "actual reliance." *Margolis v. Apple Inc.*, 777 F. Supp. 3d 1060, 1067 (N.D. Cal. 2025). "[A] UCL fraud plaintiff must allege *he or she* was motivated to act or refrain from act[ing] based on the truth or falsity of a statement." *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1141 (9th Cir. 2025). Plaintiffs appear to allege, at most, that the unidentified "impersonation" ads and related WhatsApp chats "induce[d] immediate trading activity" *by third parties*, Compl. ¶ 93, not that "plaintiff[s] . . . actually relied on [any] misrepresentation," *Ahern*, 411 F. Supp. 3d at 563.

*Finally*, "where the unfair business practices alleged under the unfair[ness] prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Parducci v. Overland Sols., Inc.*, 399 F. Supp. 3d 969, 982 (N.D. Cal. 2019). Plaintiffs' sparse allegations under the "unfair" prong, Compl. ¶ 92, refer generally to "Meta's conduct," apparently referring to the very same "business practices addressed in the fraudulent and unlawful prongs," *Parducci*, 399 F. Supp. 3d at 982—*i.e.*, Meta's alleged dissemination of unidentified "impersonation ads" and "violat[ion] of its own Terms" by failing to prevent similar ads from "reappear[ing]" after removal. Compl. ¶¶ 90-91, 93-94. That dooms Plaintiffs' attempt to state a claim under the "unfair" prong because the other two prongs cannot survive. *See Parducci*, 399 F. Supp. 3d at 982.

**D.      Plaintiffs Fail To Adequately Allege A FDUTPA Violation (Count VII)**

Plaintiffs' Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim is barred as a matter of law by their concession that California law governs all claims and, in any event, fails on its own merits.

As an initial matter, Plaintiffs concede that "California's substantive law applies to the claims of Plaintiffs and the Class" because "Meta's user agreements for Facebook, Instagram, and WhatsApp contain governing-law and forum-selection clauses . . . that select California law and a California forum for disputes arising out of use of the services." Compl. ¶ 69; *see also id.* ¶¶ 71-75 (explaining that California law may constitutionally be applied and is the appropriate law under California's choice-of-law rules). Plaintiffs' FDUTPA claim fails for that reason alone. *Trump v. Twitter, Inc.*, 602 F. Supp. 3d 1213, 1225-1227 (N.D. Cal. 2022), *appeal dismissed*, *Trump v. Twitter, Inc.*, 2025 WL 1699850 (9th Cir. 2025) (dismissing FDUTPA claim because California law governed "all disputes" between plaintiffs and defendants); *Herssein Law Grp. v. Reed Elsevier, Inc.*, 2014 WL 11370411, at *9 (S.D. Fla. 2014) ("[A] choice-of-law provision that provides for the application of non-Florida law precludes a claim under the FDUTPA.").

Even if considered on the merits, Plaintiffs' FDUTPA claim fails for many of the same reasons as their UCL claim. *See Lavigne v. Herbalife, LTD*, 2019 WL 6721619, at *11 (C.D. Cal. Oct. 22, 2019) (the UCL is "California's equivalent to the FDUTPA"); *Mauro v. General Motors Corp.*, 2008 WL 2775004, at *6 (E.D. Cal., July 15, 2008) (same). Plaintiffs' FDUTPA claim is premised on allegations that Meta delivered, optimized, and monetized ads allegedly misusing Plaintiffs' likenesses and violated its Terms purportedly promising to remove fraudulent ads. Compl. ¶¶ 136–146; *compare id.* ¶¶ 90-91, 93-94. And the claim fails because the Complaint does not allege either any deceptive statement with the requisite specificity or the violation of any affirmative promise.

Plaintiffs' allegations that Meta disseminated allegedly misleading ads cannot support their FDUTPA claim for many of the same reasons Plaintiffs' claim under the fraud-prong of the UCL fails. As under the UCL, Rule 9(b) applies to deception-based FDUTPA claims. *Librizzi v. Ocwen Loan Serv., LLC*, 120 F. Supp. 3d 1368, 1381 (S.D. Fla. 2015). But here, the Complaint does not

identify a single purportedly deceptive advertisement, thus indisputably failing to plead "precisely what statements were made" and the "content," "time and place" of each statement, *id. See supra* pp. 17-18. And the two WhatsApp chats identified in the Complaint (at ¶¶ 39, 43) cannot support Plaintiffs' claim because, again, Meta could not plausibly have had knowledge of the contents of the encrypted chats. That is dispositive. FDUTPA exempts from liability those who "disseminat[e] . . . information" "on behalf of others without actual knowledge that it violated" the statute.  Fla. Stat. § 501.212(2).

Plaintiff's breach-of-promise theory fares no better because, as explained *supra* pp. 10-11, Meta's Terms expressly disclaim that it will always remove all potentially violating content. No reasonable consumer could thus expect all content allegedly impersonating another to necessarily be removed. *See Trump*, 602 F. Supp. 3d 1213 at 1227 (express statement in defendants' Terms of Service that defendant "may" suspend an account or remove content likely barred FDUTPA deceptiveness claim based on content-moderation actions); *Casey v. Florida Coastal School of Law, Inc.*, 2015 WL 10096084, at *15 (M.D. Fla. Aug. 11, 2015) (website's qualifying language barred FDUTPA unfairness claim by making injury from allegedly deceptive language "reasonably avoidable"). Plaintiffs thus fail to allege that Meta engaged in any unfair or deceptive practice.

Finally, Plaintiffs' FDUTPA claim fails for the independent reason that they fail to allege actual damages. "[A]ctual damages" are a necessary element of a consumer FDUTPA claim, and they are "measured according to 'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097-1098 (11th Cir. 2021); *accord Rodriguez v. Recovery Performance & Marine, LLC*, 38 So.3d 178, 180 (Fla. Dist. Ct. App. 2010) (explaining that "actual damages" are so defined "because the act is intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer" (cleaned up)). Here, Plaintiffs allege only that they lost "goodwill and professional brand value," "clients and prospective engagements," unspecified "revenue and opportunities," and "out-of-pocket costs for

monitoring, takedowns, and corrective communications." Compl. ¶ 141. That is insufficient, as the "actual damages" necessary to support a FDUTPA claim do not include "speculative losses," *Rollins, Inc. v. Butland*, 951 So.2d 860, 873 (Fla. Dist. Ct. App. 2006), or "consequential damage[]," *Thomas v. Generac Power Sys. Inc.*, 2020 WL 9602342, at *4 (N.D. Fla. May 8, 2020).

For the foregoing reasons, Plaintiffs' FDUTPA should be dismissed in its entirety.

### E.     Plaintiffs Fail To Adequately Allege Breach Of Contract (Count VI)

Plaintiffs' breach of contract claim fails for the same reasons they cannot evade Section 230's protections: Plaintiffs do not identify an enforceable promise that Meta allegedly breached. "[B]reach of contract may be established on the basis of either an express provision of the contract or on the implied covenant of good faith and fair dealing." *Kroetch v. BAC Home Loan Servs.*, 2011 WL 4502350, at *3 (N.D. Cal. Sept. 27, 2011). "[T]o state a claim for breach of an implied covenant of good faith and fair dealing, the specific contractual obligation from which the implied covenant . . . arose must be alleged." *Id.* This implied covenant "is limited to assuring compliance with the express terms of the contract and cannot be extended to create obligations not contemplated by the contract." *Id.*

Plaintiffs' breach of contract claims purports to be based upon Meta's "Terms of Service/Use and incorporated Community Standards, Advertising Standards, and related platform policies," Compl. ¶ 130, yet Plaintiffs nowhere identify a single specific contractual obligation supporting this claim. Instead, they broadly allege—without reference to or quotes from any specific provision in Meta's terms and policies—that Meta "prohibits impersonation, fraud, and deceptive practices, represents that it will remove or restrict content, accounts, and advertisement that violate those rules, and provides reporting mechanisms for enforcement." *Id.* As set forth in detail above, *supra* pp. 5, 9-11, those supposed promises are untethered to Meta's Terms of Service, which in fact expressly disclaim "that [its Products] will always be safe, secure, or error-free." Lewis Decl. Ex. C at 10. That "express disclaimer" is fatal to Plaintiffs' breach-of-contract claim. *See Young v. Facebook*, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010) (dismissing breach of contract claim where similar disclaimer in Facebook's terms undermined the alleged promise to remove certain content); *see also Damner v. Facebook Inc.*, 2020 WL 7862706, at *7

(N.D. Cal. Dec. 31, 2020); *Barfuss v. Live Nation Ent., Inc.*, 2025 WL 1843207, at *5 (C.D. Cal. May 14, 2025). And Plaintiffs sparse citations to pages generally describing and providing links to Meta's policies—some of which state generally that Meta "take[s] action" against violative content—are not themselves part of Meta's Terms or policies and, in any event, contain no enforceable promises. *See supra* pp. 9-10. "[M]erely stating that Facebook does not allow users to post harmful content and that they will remove [such content] is mere[ly] 'a general monitoring policy'"—not a "'promise [made] with the constructive intent that it be enforceable.'" *Lloyd*, 2022 WL 4913347, at *9 (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1109 (9th Cir. 2009)). And Meta's Community Standards and Advertising Policies establish standards for users' behavior, not Meta's. *See supra* p. 10. In other words, each of these supposed promises, at most, "simply restates Meta's ability to exercise editorial discretion," rather than establishing an enforceable promise. *Shared.com v. Meta Platforms, Inc.*, 2022 WL 4372349, at *3 (N.D. Cal. Sept. 21, 2022).

For the same reasons, Plaintiffs fail to identify "the specific contractual obligation from which the implied covenant of good faith and fair dealing" allegedly arises, *Kroetch*, 2011 WL 4502350, at *3, instead alleging that Meta "exercised its contractual discretion . . . in a manner that unfairly frustrated Plaintiffs' . . . reasonable contractual expectations." Compl. ¶ 132. Not only is this at odds with Plaintiffs' repeated concessions that Meta *did* remove violative ads, *id.* ¶¶ 34, 44, Plaintiffs do not identify any contractual provision that establishes the basis for their "contractual expectation" that Meta would identify and remove every violative ad without fail. Nor could they, given Meta's express disclaimer of any obligation that would support that expectation. *Supra* pp. 10-11. The implied covenant "cannot be extended to create obligations not contemplated by the contract," *Kroetch*, 2011 WL 4502350, at *3, and Plaintiffs fail to tether their breach of contract claim to any obligation contemplated by their contract with Meta.

**F.      Plaintiffs Fail To Adequately Allege Unjust Enrichment (Count V)**

Plaintiffs' unjust enrichment claim fails three times over. *First*, there is no standalone cause of action for unjust enrichment, which is instead a request for restitution. *See Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1148 (N.D. Cal. 2013) (collecting cases and dismissing unjust enrichment claim).

*Second*, while courts "may 'construe the cause of action as a quasi-contract claim seeking restitution,'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015), "a plaintiff may not 'pursue or recover on a quasi-contract claim if the parties have an enforceable agreement [on] a particular subject matter.'" *Copart, Inc. v. Sparta Consulting, Inc.*, 339 F. Supp. 3d 959, 983-984 (E.D. Cal. Sept. 10, 2018). There is such an agreement here, and any quasi-contract claim for restitution is thus barred. Plaintiffs allege they "entered into binding agreements with Meta (the Terms of Service/Use and incorporated Community Standards, Advertising Standards, and related platform policies)." Compl. ¶ 130. And those Terms expressly rebut Plaintiffs' claim that Meta is obligated to remove allegedly fraudulent ads. *Supra* pp. 9-11. Plaintiffs' unjust enrichment claim expressly depends on Plaintiffs' allegation that Meta violated its "Terms, Community Standards, and Advertising Policies," Compl. ¶ 124—the same sources on which Plaintiffs' breach of contract claim relies, *supra* pp. 5, 8-11—effectively conceding that the subject matter of their unjust enrichment is covered by the parties' "enforceable agreement." *See Copart*, 339 F. Supp. 3d at 983-984; *see also O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1000-1001 (N.D. Cal. 2014) (dismissing implied-in-fact contract claim that would have imposed obligations expressly disclaimed by relevant contract provisions).

*Finally*, Plaintiffs concede this claim is derivative of their other claims. Compl. ¶ 124. Because this claim "does not allege any distinct purported impropriety, but depends entirely on the allegation that the defendants benefitted from actions . . . unlawful under other theories of liability in their complaint," the claim rises and here, falls with those other claims. *In re Late Fee Litig.*, 528 F. Supp. 2d 953, 967 (N.D. Cal. 2007).

### G.    Plaintiffs Fail To State a Declaratory Judgment Act Claim (Count VIII)

Plaintiffs' declaratory judgment claim offers no distinct allegations; it is instead entirely derivative of their other claims. *See* Compl. ¶¶ 147-148. Because they do not adequately allege any of their other claims, their claim for declaratory relief also fails. *See, e.g.*, *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 949 (N.D. Cal. 2023) ("Plaintiffs' declaratory judgment claim will rise and fall with [their] other claims: if Plaintiffs fail to allege facts sufficient to state a claim under any other cause of action, the claim for declaratory judgment will be dismissed.").

### III.    DISMISSAL SHOULD BE WITH PREJUDICE

Dismissal without leave to amend is appropriate where "[f]urther amendment would simply be a futile exercise." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020). That is the case where, for example, "Plaintiff['s] legal theories fail," regardless of any deficiencies in their factual allegations. *Id.* And dismissal with prejudice is particularly appropriate where the futility of amendment is due in part to the operation of Section 230, which is designed to protect providers like Meta not only from "ultimate liability," but also from "having to fight costly and protracted legal battles." *Fair Hous. Council of San Fernando Valley v. Roommates*, 521 F.3d 1157, 1175 (9th Cir. 2008). Courts have repeatedly dismissed claims barred by Section 230 with prejudice. *See, e.g.*, *Sikhs for Just., Inc. v. Facebook, Inc.*, 697 F. App'x 526, 526 (9th Cir. 2017) ("Because [the] claim is barred by [Section 230], . . . leave to amend . . . would have been futile. . . . [T]he district court properly dismissed . . . [the] claim with prejudice."); *Castronuova v. Meta Platforms, Inc.*, 2025 WL 1914860, at *4 (N.D. Cal. June 10, 2025) (collecting cases).

No additional facts could cure the fundamental legal deficiencies in Plaintiffs' claims, which cannot overcome Section 230 immunity and fail as a matter of law. Further amendment would accordingly be futile, and dismissal should be with prejudice.

### CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: December 5, 2025                    Respectfully submitted,

                                           By:/s/ Sonal N. Mehta
                                           WILMER CUTLER PICKERING
                                           HALE AND DORR LLP
                                           SONAL N. MEHTA (SBN 222086)
                                           Sonal.Mehta@wilmerhale.com
                                           JESSICA LEWIS (SBN 302467)
                                           Jessica.Lewis@wilmerhale.com
                                           LAKSHMI REDDY (SBN 345741)
                                           Lakshmi.Reddy@wilmerhale.com
                                           2600 El Camino Real, Suite 400
                                           Palo Alto, CA 94306
                                           Telephone: (650) 858-6000

                                           ARI HOLTZBLATT (SBN 354631)
                                           Ari.Holtzblatt@wilmerhale.com
                                           2100 Pennsylvania Avenue NW
                                           Washington, DC 20037
                                           Telephone: (202) 663-6443

                                           TALBOT CHILD (SBN 359904)
                                           Talbot.Child@wilmerhale.com
                                           50 California Street, Suite 3600
                                           San Francisco, CA 94111
                                           Telephone: (628) 235-1080

                                           *Attorneys for Defendants Meta Platforms, Inc.;
                                           Instagram, LLC; Facebook Operations, LLC; and
                                           WhatsApp, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of December, 2025, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System.

*/s/ Sonal N. Mehta*

Sonal N. Mehta