WILMER CUTLER PICKERING
HALE AND DORR LLP
SONAL N. MEHTA (SBN 222086)
JESSICA LEWIS (SBN 302467)
LAKSHMI REDDY (SBN 345741)
Sonal.Mehta@wilmerhale.com
Jessica.Lewis@wilmerhale.com
Lakshmi.Reddy@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

ARI HOLTZBLATT (SBN 354631)
Ari.Holtzblatt@wilmerhale.com
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6443

TALBOT CHILD (SBN 359904)
Talbot.Child@wilmerhale.com
50 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (628) 235-1080

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA,
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN SUDDETH and SARA PERKINS,<br>                    Plaintiffs,<br><br>        v.<br><br>META PLATFORMS, INC., INSTAGRAM, LLC,<br>FACEBOOK OPERATIONS, LLC, and<br>WHATSAPP, LLC,<br>                    Defendants. | Case No. 3:25-cv-08581-RS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>Judge: Hon. Richard Seeborg<br>Courtroom 3, 17th Floor<br>Date: March 12, 2026<br>Time: 1:30 p.m. |

# **TABLE OF CONTENTS**

Page

ARGUMENT ....................................................................................................................................1

I.    Plaintiffs' Attempts To Circumvent Section 230 Fail ...........................................................1

    A.    Plaintiffs Are Wrong That Their Lanham Act And Misappropriation
        Claims Are Exempted From Section 230's Bar...........................................................2

    B.    Plaintiffs' Claims Treat Meta As The Publisher Of Third-Party Content ..............3

    C.    Plaintiffs Do Not Plausibly Allege Material Contribution ......................................6

II.   Plaintiffs Fail To Allege Essential Elements Of Their Claims .............................................8

    A.    Plaintiffs Do Not Plausibly Allege A Lanham Act Violation (Count I).................8

    B.    Plaintiffs Do Not Plausibly Allege Misappropriation (Counts III and IV)............10

    C.    Plaintiffs Do Not Plausibly Allege A UCL Violation (Count II) ...........................11

    D.    Plaintiffs Do Not Plausibly Allege a FDUTPA Violation (Count VII) .................12

    E.    Plaintiffs Do Not Plausibly Allege Breach Of Contract (Count VI) .....................13

    F.    Plaintiffs Do Not Plausibly Allege Unjust Enrichment (Count V)........................14

    G.    Plaintiffs Fail To State a Declaratory Judgment Act Claim (Count VIII) .............15

III.  Dismissal Should Be With Prejudice...................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ................................................................................................ 9-10

*Abdul-Jabbar v. General Motors Corp.*,
85 F.3d 407 (9th Cir. 1996) .................................................................................................... 8-9

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ................................................................................ 11-12

*Allen v. National Video, Inc.*,
610 F. Supp. 612 (S.D.N.Y. 1985) ............................................................................................9

*Anderson v. TikTok, Inc.*,
116 F.4th 180 (3d Cir. 2024) ....................................................................................................7

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ........................................................................................... 2, 7-8

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) ...................................................................................................8

*Calise v. Meta Platforms, Inc.*,
No. 4:21-cv-6186 (N.D. Cal. Sept. 22, 2025) ...........................................................................4

*Caraccioli v. Facebook, Inc.*,
700 F. App'x 588 (9th Cir. 2017) ......................................................................................... 4-5

*Casa Dimitri Corp. v. Invicta Watch Co. of America, Inc.*,
270 F. Supp. 3d 1340 (S.D. Fla. 2017) ...................................................................................13

*Copart, Inc. v. Sparta Consulting, Inc.*,
339 F. Supp. 3d 959 (E.D. Cal. Sept. 10, 2018) ................................................................. 14-15

*Cross v. Facebook, Inc.*,
14 Cal. App. 5th 210-211 (2017) ........................................................................................ 10-11

*Damner v. Facebook Inc.*,
2020 WL 7862706 (N.D. Cal. Dec. 31, 2020) ..........................................................................5

*Doe v. Grindr Inc.*,
128 F.4th 1148 (9th Cir. 2025) .............................................................................................. 6-7

*Doe v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016) ................................................................................................ 5-6

*Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001) ........................................................................................... 8-9

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2019) ........................................................................................ 14-15

*Dyroff v. Ultimate Software Group, Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ...............................................................................................7

*Enigma Software Group USA, LLC v. Malwarebytes, Inc.*,
    946 F.3d 1040 (9th Cir. 2019) ...............................................................................................2

*Estate of Bride ex rel. Bride v. Yolo Technologies, Inc.*,
    112 F.4th 1168 (9th Cir. 2024) ..............................................................................................7

*Fair Housing Council of San Fernando Valley v. Roommates.com*,
    521 F.3d 1157 (9th Cir. 2008) ...............................................................................................6

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
    76 F.3d 259 (9th Cir. 1996) ...................................................................................................9

*Forrest v. Meta Platforms, Inc.*,
    737 F. Supp. 3d 808 (N.D. Cal. 2024) ........................................................................ 7, 10-11

*Fraley v. Facebook, Inc.*,
    830 F. Supp. 2d 785 (N.D. Cal. 2011) ...................................................................................3

*Hepp v. Facebook*,
    14 F.4th 204 (3d Cir. 2021) ...................................................................................................3

*HomeLight, Inc. v. Shkipin*,
    721 F. Supp. 3d 1019 (N.D. Cal. 2024) ...............................................................................12

*In re Apple Inc. App Store Simulated Casino-Style Games Litigation*,
    2025 WL 2782591 (N.D. Cal. Sept. 30, 2025) .....................................................................6

*In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*,
    702 F. Supp. 3d 809 (N.D. Cal. 2023) ............................................................................... 5-6

*Isgur v. Meta Platforms, Inc.*,
     2026 WL 194640 (N.D. Cal. Jan. 26, 2026)..............................................................4-5, 14-15

*Katz-Lacabe v. Oracle America, Inc.*,
    668 F. Supp. 3d 928 (N.D. Cal. 2023) .................................................................................15

*Keep Santa Rosa Beautiful Inc. v. Butterflies in Motion, Inc.*,
    2022 WL 19078118 (N.D. Fla. Dec. 5, 2022) ......................................................................13

*Kennedy v. Meta Platforms, Inc.*,
    2024 WL 4565091 (N.D. Cal. Oct. 23, 2024)........................................................................5

*Kournikova v. General Media Communications Inc.*,
278 F. Supp. 2d 1111 (C.D. Cal. 2003) ................................................................................ 8-9

*Kroetch v. BAC Loan Services, Inc.*,
2011 WL 4502350 (N.D. Cal. Sept. 27, 2011) ........................................................................14

*Lepore v. NL Brand Holdings LLC*,
2017 WL 4712633 (S.D.N.Y. Sept. 28, 2017)...........................................................................9

*Levitt v. Yelp! Inc.*,
2011 WL 13153230 (N.D. Cal. Mar. 22, 2011)...................................................................... 7-8

*Lloyd v. Facebook, Inc.*,
2022 WL 4913347 (N.D. Cal. Oct. 3, 2022)...............................................................................4

*Long v. Dorset*,
854 F. App'x 861 (9th Cir. 2021) ..............................................................................................3

*McQuirk v. Donnelley*,
189 F.3d 793 (9th Cir. 1999) .....................................................................................................5

*Parducci v. Overland Solutions, Inc.*,
399 F. Supp. 3d 969 (N.D. Cal. 2019) .....................................................................................12

*Parents for Privacy v. Barr*,
949 F.3d 1210 (9th Cir. 2020) .................................................................................................15

*Perfect 10, Inc. v. CCBill LLC*,
488 F.3d 1102 (9th Cir. 2007) ...................................................................................................3

*Pete v. Facebook Data Breach*,
2026 WL 32635 (N.D. Cal. Jan. 6, 2026).................................................................................5

*Pete v. Facebook Data Breach*,
No. 26-601 (9th Cir. Jan 29,  2026) ..........................................................................................5

*Riley v. Caliber Home Loans, Inc.*,
2022 WL 2072655 (9th Cir. June 9, 2022) ..............................................................................11

*Waits v. Frito-Lay, Inc.*,
978 F.2d 1093 (9th Cir. 1992) ...................................................................................................9

*Wilkinson v. Meta Platforms, Inc.*,
No. 25-6436 (9th Cir. Dec. 16, 2025).......................................................................................6

*Yaffe v. JP Morgan Chase Bank N.A.*,
2024 WL 5063820 (N.D. Cal. Dec. 11, 2024)..........................................................................12

*Young v. Facebook, Inc.*,
2010 WL 4269304 (N.D. Cal. Oct. 25, 2010)............................................................................5

**Rules, Regulations, Statutes**

15 U.S.C. § 1125 (Lanham Act) ................................................................................... 1-4, 8, 15

28 U.S.C. § 2201 (Declaratory Judgment Act) ............................................................................15

47 U.S.C. § 230 (Communications Decency Act) ................................................................ *passim*

Cal. Bus. & Prof. Code § 17200 et seq. (Unfair Competition Law) ................................ 1-5, 11-12

Fla. Stat. §§ 501.201-501.213 (Florida Deceptive and Unfair Trade Practices Act) ........ 1-5, 12-13

Plaintiffs' Opposition underscores the deficiencies in their Complaint.

*First*, Plaintiffs concede the predicates for Section 230 immunity. Plaintiffs concede that Meta is an interactive computer service provider subject to Section 230, that third-party scammers created the allegedly unlawful content in the ads at issue, and that Meta's role was limited to automated, content-neutral ad placement and the removal of reported ads. Those concessions alone foreclose Plaintiffs' claims.

Plaintiffs nevertheless attempt to evade Section 230 by repackaging their theories: they argue that their Lanham Act and misappropriation claims fall within the intellectual-property exception, that their breach of contract, UCL, and FDUTPA claims target Meta as a promisor rather than a publisher, and that Meta "materially contributed" to the ads at issue merely by facilitating their publication. Each contention ignores binding Ninth Circuit authority or contradicts Plaintiffs' own allegations. As Meta explained in its Motion, Plaintiffs seek to impose liability on Meta for publishing third-party content, which Section 230 squarely prohibits.

*Second,* Plaintiffs' claims remain legally deficient independent of Section 230. They do not dispute that the ads did not suggest Plaintiffs' endorsement of Meta or commercially advantage Meta, which is fatal to their Lanham Act and misappropriation claims. Nor do Plaintiffs refute that the Complaint fails to allege any breached contractual promise or sufficiently specific deceptive statement, dooming their breach of contract, UCL, and FDUTPA claims. Finally, Plaintiffs do not contest that their unjust enrichment claim is barred by the existence of an enforceable contract or that their request for declaratory relief necessarily falls with their substantive claims.

Because these deficiencies are incurable, dismissal should be with prejudice.

## ARGUMENT

### I. PLAINTIFFS' ATTEMPTS TO CIRCUMVENT SECTION 230 FAIL

Plaintiffs appropriately concede the first prong of Section 230 is satisfied—that Meta is a provider of an interactive computer service. *See* Opp. 3. Their attempts to otherwise circumvent Section 230 are meritless.

*First*, Plaintiffs incorrectly argue that out-of-circuit and inapposite case law exempts their Lanham Act and misappropriation claims from Section 230, failing to address binding Ninth

Circuit precedent—identified in Meta's motion—foreclosing that position.

*Second*, on Section 230's second prong, Plaintiffs do not respond to Meta's argument, quoting Plaintiffs' own allegations, that each of their claims would impose liability for "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." Mot. 6-7 (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009)). Plaintiffs instead argue that their claims would hold Meta liable for its "own business conduct." Opp. 6. But they either (1) describe that conduct as "approving"—that is, publishing—the third-party conduct, which concedes this prong is satisfied or (2) attempt to recharacterize their breach of contract, UCL, and FDUTPA claims as seeking to hold Meta liable for its own promises, misrepresentations, and omissions rather than as a publisher of third-party content—ignoring Meta's Terms and Plaintiffs' own allegations in the process. *Id.* 4-6.

*Third*, Plaintiffs contend Section 230's third prong is not satisfied because Meta materially contributed to the ads merely by facilitating the ads' dissemination. Opp. 7-9. But this argument ignores that Plaintiffs' claims do not turn on the mere dissemination of the "impersonation" ads but on their substance, which Plaintiffs concede "came from third-party scammers." *Id.* 7.

Plaintiffs' arguments are contrary to law and their own allegations.

### A. Plaintiffs Are Wrong That Their Lanham Act And Misappropriation Claims Are Exempted From Section 230's Bar

Plaintiffs ignore binding Ninth Circuit precedent foreclosing their position that Section 230's intellectual-property exception applies to their Lanham Act and misappropriation claims (Counts I, III, and IV). *See* Opp. 3-4, 8-9; 47 U.S.C. § 230(e)(2). Their failure to confront, or even acknowledge, this precedent and instead to rely on conflicting out-of-circuit decisions is a telling omission tantamount to a concession that they have no claim in this Court.

Regarding Plaintiffs' Lanham Act claim, under binding precedent, Section 230's intellectual-property exception does not apply to "claims brought under § 1125(a) of the Lanham Act, unless the claim itself involves intellectual property." Mot. 8 (quoting *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1053 (9th Cir. 2019)). Plaintiffs do not even address *Enigma* nor dispute that their claim does not involve intellectual property. Instead,

Plaintiffs offer only bare recitations of Section 230's intellectual property carveout. *See* Opp. 3, 8. But that cannot save their Lanham Act claim as Plaintiffs effectively concede—by not disputing—that their false association claim does not involve the use of intellectual property. *Id.*

As for their state law misappropriation claims, Plaintiffs again ignore binding Ninth Circuit precedent, cited in Meta's Motion, holding that Section 230(e)(2) is limited to *federal* intellectual property rights, not state-law "right of publicity" claims. *See* Mot. 8; *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1119 & n.5 (9th Cir. 2007) ("[I]nclusion of rights protected by state law within the 'intellectual property' exemption would fatally undermine the broad grant of immunity provided by [Section 230]."). Plaintiffs' reliance on *Hepp v. Facebook*, 14 F.4th 204 (3d Cir. 2021), does not change the outcome. In *Hepp,* the Third Circuit recognized "a clear split of persuasive authority," and so "emphasiz[ed] the narrowness of [its] holding," including that it "express[ed] *no opinion* as to whether other states' [beyond Pennsylvania] rights of publicity qualify as intellectual property as a matter of federal law." *Id.* at 211-212, 214 (emphasis added). But the Ninth Circuit has already resolved the question the court acknowledged in *Hepp,* holding Section 230's intellectual property "exception does not even apply to state laws protecting intellectual property." *Long v. Dorset*, 854 F. App'x 861, 865 n.4 (9th Cir. 2021).

Nor does *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011) help Plaintiffs. *Fraley* did not reject Section 230 immunity based on Section 230's intellectual-property exception. The court instead found that Facebook "appears to be a content provider" because the plaintiffs alleged that "Facebook … deceptively mistranslate[ed]" a user's "clicking on a 'Like' button on a company's page[] into the words 'Plaintiff likes [Brand],' and further combin[ed] that text with Plaintiff's photograph, the company's logo, and the label 'Sponsored Story.'" *Id.* at 802. But such circumstances bear no similarity to those alleged here. Plaintiffs have not alleged that Meta authored any deceptive content, only that Meta did not prevent the publication of unlawful content admittedly created by third-party scammers.

**B.    Plaintiffs' Claims Treat Meta As The Publisher Of Third-Party Content**

Plaintiffs next seek to evade Section 230 by arguing their breach of contract, UCL, and FDUTPA claims (Counts II, VI, and VII) seek to hold Meta liable for its "own conduct and

promises," rather than for publishing third-party content. Opp. 4-5.[1]

Regarding Plaintiffs' breach of contract claim, Meta's Motion explained that such claims are beyond Section 230's reach only where premised on the breach of a clear and specific promise, not an alleged failure to follow general content moderation policies. *See* Mot. 8-9. And here, as Meta also explained (Mot. 9-11), neither the Complaint nor any of the referenced Terms or policies contain any enforceable promise to remove scam ads. Plaintiffs' only response is to repeat allegations already shown to be deficient—allegations which purport to *paraphrase* Meta's Terms and policies as "imply[ing]" "contractual promises" to "'prohibit[] impersonation'" and "'remove or restrict'" violating content and accounts. Opp. 5, 20-21 (quoting Compl. ¶¶ 130-131). As already explained, "merely stating that Facebook does not allow users to post harmful content and that [Meta] will remove [such content]" is "mere[ly] 'a general monitoring policy'" insufficient to evade Section 230. *Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *9 (N.D. Cal. Oct. 3, 2022); *see also* Mot. 9-10 (collecting cases). Plaintiffs do not address and therefore concede that point.[2]

Plaintiffs also ignore the cases in Meta's Motion holding that Meta's express disclaimer regarding third-party content precludes any plausible allegation of an enforceable promise to prevent or remove third-party content. *See* Mot. 10-11; *see also Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (holding breach of contract and related UCL claim "barred by Facebook's terms of service, which expressly disclaim Facebook's responsibility for the content published by third parties"); *Isgur v. Meta Platforms, Inc.*, 2026 WL 194640, at *6 (N.D. Cal. Jan. 26, 2026) (attempts "to allege that Meta is liable under its TOS for (1) any third-party … behavior or (2) responsible for immediately remedying third party behavior… are not actionable"). And Plaintiffs' conclusory assertion that enforceability of the disclaimer "is questionable" because

---

[1] By advancing this argument with respect to only their contract, UCL, and FDUTPA claims, Plaintiffs implicitly concede their Lanham Act and misappropriation claims *do* target Meta as a publisher.

[2] Plaintiffs' continued reliance on *Calise v. Meta Platforms, Inc.*, No. 4:21-cv-6186 (N.D. Cal. Sept. 22, 2025), is misplaced, including because Plaintiffs ignore that *Calise* involved a now-inoperative version of Meta's terms stating that Meta "*will* take appropriate action," rather than that it merely "*may*." Mot. 10 n.5. Moreover, the district court in *Calise* on remand certified its order for interlocutory review, in part because "reasonable jurists can and have actually disagreed" with its holding that the Terms "impose the asserted legal obligations on Meta." *Calise*, No. 4:21-cv-6186 (N.D. Cal. Jan. 8, 2026), Dkt. 83 at 1-2.

Meta "makes explicit promises to combat certain misconduct" fails twice over. Opp. 21 First, Plaintiffs do not—and cannot—identify any such "explicit promises." Mot. 8-11; *supra* p.3. And second, Plaintiffs support their argument with a lone citation to an inapposite case about whether a party may disclaim liability for its own intentional misconduct—which the disclaimer at issue here does not even purport to do, instead disclaiming responsibility only for the misconduct of others. Opp. 21 (citing *McQuirk v. Donnelley*, 189 F.3d 793, 796-797 (9th Cir. 1999)).

Plaintiffs otherwise rely only on their own conclusory allegation that they have "preemptively allege[d]" that the disclaimer is "unconscionable, inapplicable to willful policy violations, or otherwise unenforceable," Opp. 21, a bald legal conclusion this Court should not credit. In any event, Plaintiffs' unsupported claim of unconscionability is foreclosed as "without merit" by *Caraccioli*, 700 F. App'x at 590, and inconsistent with *Isgur* and many other decisions in this district ruling that Meta's disclaimer is enforceable against assertions, like Plaintiffs', of enforceable contractual promises to prevent or remove third-party content. *See, e.g.*, *Young v. Facebook, Inc.*, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010); *Kennedy v. Meta Platforms, Inc.*, 2024 WL 4565091, at *3 (N.D. Cal. Oct. 23, 2024); *Pete v. Facebook Data Breach*, 2026 WL 32635, at *2 (N.D. Cal. Jan. 6, 2026), *appeal filed*, No. 26-601 (9th Cir. Jan. 29, 2026); *Damner v. Facebook Inc.*, 2020 WL 7862706, at *7 (N.D. Cal. Dec. 31, 2020).

Plaintiffs' attempts to save their UCL and FDUTPA claims fail for similar reasons. *First*, Plaintiffs contend their claims are premised on "misrepresentations" regarding Meta's removal of scam ads, but Plaintiffs identify no promise to remove all scam content. *See* Opp. 5. Nor could they, given Meta's express disclaimer of any obligation to do so, and its express warning to users that it "may not detect all policy violations." Dkt. 29-3 at 4.

*Second*, Plaintiffs' reliance on *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016), and *In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, 702 F. Supp. 3d 809, 834 (N.D. Cal. 2023), is also unavailing. Opp. 4, 6. *Internet Brands* held Section 230 did not bar a failure-to-warn claim premised on a website operator's "fail[ure] to warn [the plaintiff] about information it obtained from an outside source about how third parties targeted and lured victims through [the website]." 824 F.3d at 851. Unlike here, the *Internet Brands* plaintiff

did not challenge the website operator's "failure to remove content posted on the website" nor allege that third parties "posted anything to the website." *Id.* "The plaintiff's failure-to-warn claim [thus] was not based on the defendant's failure to remove any user content or on the defendant's publishing or monitoring of third-party content." *Doe v. Grindr Inc.*, 128 F.4th 1148, 1154 (9th Cir. 2025), *cert. denied* No. 24-1202 (U.S. Oct. 14, 2025) (summarizing *Internet Brands*). Rather, the claim sought to hold the website operator liable for its failure to act based on knowledge "of a 'known conspiracy operating *independent* of the site's publishing function.'" *Id.* (emphasis added). And *In re Social Media Adolescent Addiction* addressed a negligent failure to warn claim—not asserted here—similarly holding Section 230 did not apply because defendants "could address their duty *without changing what they publish*." 702 F. Supp. 3d at 834 (emphasis added).

Here, by contrast, even Plaintiffs concede their alleged "injuries flow from Meta's overall conduct in *approving scam ads* en masse, *failing to enforce policies*," failing to *monitor content* with "identity verification for advertisers and effective *takedown* protocols," and allegedly "*allowing*" fraudulent ads, and Plaintiffs seek "injunctive relief requiring Meta to change its own [content-moderation] processes" including "takedown protocols." Opp. 6 (emphases added). Plaintiffs thus admit their claims "boil[] down to deciding whether to exclude material that third parties seek to post online," which "is perforce immune under Section 230." *Fair Hous. Council of San Fernando Valley v. Roommates.com*, 521 F.3d 1157, 1170-1171 (9th Cir. 2008). As in *Grindr*, Meta's "role as a publisher of third-party content does not give it a duty to warn users of 'a general possibility of harm' resulting from the App." 128 F.4th at 1154.[3]

## C.    Plaintiffs Do Not Plausibly Allege Material Contribution

Plaintiffs' arguments that Meta materially contributed to the unlawfulness of the challenged ads are unsupported by precedent and contrary to their own allegations and admissions. Decades of Ninth Circuit precedent require that the plaintiff plausibly allege the defendant

---

[3] This is true regardless of whether Plaintiffs have identified an enforceable contractual promise (they have not). As Meta argued—and to which Plaintiffs do not respond—"for the defendant to take down third-party content" even if to fulfill a promise, "the defendant must monitor the third-party content. … And if that were so, then Section 230 immunity should apply under *Calise*." *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 2025 WL 2782591, at *21 (N.D. Cal. Sept. 30, 2025); *see* Mot. 9 n.3. The Ninth Circuit has since granted the petition for permission to appeal. *See Wilkinson v. Meta Platforms, Inc.*, No. 25-6436 (9th Cir. Dec. 16, 2025), Dkt. 13.

materially contributed to "'what makes the displayed content illegal,'" not just that it "'facilitate[d]'" or "'augment[ed] the content generally.'" Mot. 11-12 (citing cases). Plaintiffs' Opposition does not dispute that what makes the content at issue unlawful is the use of Plaintiffs' "'names, images, voices, and personas'" to promote investment scams. Mot. 12 (quoting Compl. ¶ 21). And Plaintiffs concede that the "initial ad content came from third-party scammers," including, critically, the images of Plaintiffs. Opp. 7. That is dispositive.

Plaintiffs' counterarguments ignore precedent and reflect a misguided, vastly expanded view of material contribution—contrary to congressional intent. Plaintiffs argue Meta materially contributed to the ads by "creat[ing] the audience and context for these ads," "designing algorithms that decide who sees an advertisement and when," and "optimiz[ing] the reach" of the ads. Opp. 7. But each of these are "actions (traditional to publishers) that are necessary to the display of unwelcome and actionable content"—which are protected by Section 230—and *not*, "on the other hand, [actions] responsib[le] for what makes the displayed content illegal or actionable." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1099 (9th Cir. 2019). Plaintiffs rely on the Third Circuit's decision in *Anderson v. TikTok, Inc.*, 116 F.4th 180 (3d Cir. 2024), to argue that algorithmically recommending third-party content constitutes material contribution, but the Ninth Circuit's decisions in *Grindr*, 128 F.4th at 1153, and *Estate of Bride ex rel. Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1175 (9th Cir. 2024), specifically reject that argument and Plaintiffs do not address those binding decisions. *See* Mot. 12; Opp. 7. And Plaintiffs' reliance on *Forrest v. Meta Platforms* does not save them, because they do not raise allegations like those that created in *Forrest* a "factual dispute" over whether Meta's "tools themselves contributed to the *content* of the ads, including to the aspects that [we]re allegedly illegal." 737 F. Supp. 3d 808, 818 (N.D. Cal. 2024) (emphasis added); *see* Opp. 7-8. Instead, Plaintiffs' Opposition, like their Complaint, concedes that the scammers provided the content, and Meta's tools at most applied the same neutral algorithmic matching they would for any ad, regardless of content. *See* Opp. 7; Compl. ¶ 26.

Plaintiffs' remaining arguments on material contribution fare no better. *First*, they argue Meta materially contributed to the ads depicting Plaintiffs because it "assumed an editorial role despite knowing that the content was unlawful." Opp. 8. But "[s]o long as the service provider has

no part in the creation of the third-party content, it is irrelevant for purposes of Section 230(c)(1) … whether the provider has knowledge of the complained-of content." *Levitt v. Yelp! Inc.*, 2011 WL 13153230, at *8 (N.D. Cal. Mar. 22, 2011) (citing *Barnes*, 570 F.3d at 1103, 1108).

*Second*, Plaintiffs argue Meta materially contributed to the ads because it "solicited" or "train[ed]" the advertisers, and targeted the ads, Opp. 8, but the Ninth Circuit rejected that very argument in *Calise v. Meta Platforms, Inc.*, 103 F.4th 732 (9th Cir. 2024). There, the plaintiffs claimed Meta contributed to content—fraudulent ads—by "solicit[ing]" advertisers, "assist[ing]" them via "training," and targeting the ads, including by using user data to "show ads to the right people." *Id.* at 736-737, 745. The court held that "Meta's [alleged] 'solicitation' and 'assistance' efforts are, on their face neutral. They are allegedly used for unlawful purposes, but that does not result from Meta's efforts … [and] does not undo § 230(c)(1)'s protections just because it could be misused by third parties." *Id.* at 745. Similarly, allegations that Meta "skew[ed] fraudulent content" by targeting ads did not constitute material contribution because the scammers had created and developed the ads' allegedly unlawful content; Meta's "content-neutral tools" were merely "used to facilitate communications." *Id.* at 746. The same conclusion should yield here.

## II.    PLAINTIFFS FAIL TO ALLEGE ESSENTIAL ELEMENTS OF THEIR CLAIMS

### A.    Plaintiffs Do Not Plausibly Allege A Lanham Act Violation (Count I)

Plaintiffs do not dispute that direct liability under the Lanham Act requires that a "person … uses in commerce any word, term, name, symbol, or device" in a way "likely to cause confusion … as to the … sponsorship[] or approval *of his or her goods, services, or commercial activities*." 15 U.S.C. § 1125(a)(1)(A) (emphasis added). And they do not dispute that the ads at issue suggested, at most, Plaintiffs' sponsorship or approval not of Meta but of *the scammers'* "unlawful promotions," including certain "promoted investment opportunities." Compl. ¶¶ 57, 78; *accord id.* ¶¶ 2, 21, 37, 93; Mot. 13-14. Instead of addressing that defect, Plaintiffs argue a defendant may be liable under the Lanham Act for using ads created by a third party. But that is beside the point. The dispositive point is whether the ads were likely to suggest Plaintiffs sponsored or approved *Meta's* product or service. Plaintiffs' own cases prove the point as each involved ads "suggest[ing] that plaintiff[s] sponsored or approved *the defendant's* product" or service, *Kournikova v. General*

*Media Commc'ns Inc.*, 278 F. Supp. 2d 1111, 1120 (C.D. Cal. 2003) (emphasis added). *See, e.g.*, *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1000 (9th Cir. 2001) (alleging use of plaintiffs' photographs in defendant's catalogue); *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 409-410 (9th Cir. 1996) (alleging use of plaintiff's name in commercial for defendant's product); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1097-1098 (9th Cir. 1992) (alleging use of "imitation of Waits['s] voice" in commercial for defendant's product); *Allen v. National Video, Inc.*, 610 F. Supp. 612, 617 (S.D.N.Y. 1985) (alleging use of plaintiff's likeness in "an advertisement for defendant National Video"). Here, by contrast, Plaintiffs do not dispute they were required, but failed, to allege that the ads at issue falsely "suggest[ed] that plaintiff[s] sponsored or approved [Meta's] product" or service. *Kournikova*, 278 F. Supp. 2d at 1120.

To the extent Plaintiffs' citations to two cases addressing contributory trademark or copyright infringement could be construed as arguments in support of contributory liability here, that argument would fail for the reasons already explained (Mot. 14 n.7) and to which Plaintiffs offer no response. To begin, Meta is not aware of—and Plaintiffs certainly do not cite—"a single case in which a court has found a defendant indirectly liable for false endorsement based on the acts of a third party." *Lepore v. NL Brand Holdings LLC*, 2017 WL 4712633, at *3 (S.D.N.Y. Sept. 28, 2017). In any event, the Complaint fails to plead the elements of contributory liability: that with "knowledge of the infringing activit[ies]," Meta "induce[d], caus[ed] or materially contribute[d] to the infringing conduct of another." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996). Regarding knowledge, "in an online context," holding a "computer system operator liable" for contributory infringement requires "evidence of actual knowledge of specific acts of infringement." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001); *see* Mot. 14 n.7. Thus, contributory liability can attach only where a computer system operator "learns of specific infringing material available on [its] system and fails to purge such material from the system." *A&M Records*, 239 F.3d at 1021. Here, the Complaint's only allegation regarding Meta's knowledge of "specific infringing" ads is the allegation that after "Plaintiffs notified Meta of the impersonations …, *substantially similar* creatives and group funnels *reappeared*." Compl. ¶ 44 (emphasis added); *see also id.* ¶ 34 ("[M]aterially identical creatives

were re-uploaded under new ad accounts when prior ads were removed, [and] WhatsApp groups were cloned and re-named to evade user reports[.]"). The Complaint itself thus alleges that when Meta became aware of "specific infringing material," it "removed the material," dooming their claim. *A&M Records*, 239 F.3d at 1021. Plaintiffs' other allegations regarding Meta's purported knowledge (cited at Opp. 12) pertain only to generalized reports of other ads allegedly using the likenesses of other financial professionals. *See, e.g.* Compl. ¶¶ 5, 33, 81. That is not "knowledge of [the] specific acts of infringement" here at issue. *A&M Records*, 239 F.3d at 1021. And Meta cannot be held contributorily liable based on the theory that "the structure of [its] system allows for the exchange of [infringing] material." *Id.*

Any claim of contributory liability also fails because—again, as Meta explained and to which Plaintiffs offer no response—the Complaint does not allege that Meta induced, caused, or materially contributed to the alleged infringement. Plaintiffs do not dispute that to the extent there is contributory liability for false endorsement claims, material contribution requires more than simply providing "the sites and facilities" for direct infringement, *A&M Records*, 239 F.3d at 1022; *see also* Mot. 14 n.7. That is because what makes false endorsement unlawful is not the "mere use of an image or name," but the suggestion of a false endorsement. Here, Plaintiffs allege only that Meta "published and disseminated" the ads using Plaintiffs' likenesses, Compl. ¶ 78, not that Meta was in any way responsible for the ads' alleged suggestion of false endorsement, *id.* ¶ 26 ("[S]cammers … uploaded creative assets falsely depicting or quoting a known advisor[.]"); *see also supra* pp.6-8. The Complaint thus does not plausibly allege that Meta materially contributed to any false suggestion that Plaintiffs endorsed certain stocks or other investment opportunities.

**B.**    **Plaintiffs Do Not Plausibly Allege Misappropriation (Counts III and IV)**

Plaintiffs also fail to rebut the dispositive flaw in their misappropriation claims: the Complaint does not plausibly allege that Meta "commercially exploited" Plaintiffs' likenesses by using them in a way "*aimed* at obtaining a commercial advantage" for Meta. *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 210-211 (2017) (emphasis added). Relying solely on *Forrest*, Plaintiffs deflect by arguing that liability can sometimes attach based on "content originated from third parties." Opp. 13. But Plaintiffs do not dispute that, unlike in *Forrest*, they have not plausibly

alleged that "Meta profited *more* from ads that included [their] likeness[es] than it would have if the ads had not." 737 F. Supp. 3d at 819-820. Nor do they respond to Meta's explanation (Mot. 17) that *Forrest*'s reasoning is flawed as it failed to heed the requirement under California law that use of a plaintiff's likeness must have been "aimed at obtaining a commercial advantage" for the defendant. *Cross*, 14 Cal. App. 5th at 210-211. And on that requirement, Plaintiffs do not and could not possibly dispute that, by the Complaint's own allegations, the "aim[]" of the ads' alleged use of Plaintiffs' likenesses was to benefit the third-party scammers by lending credibility to investment-related ads, thereby "'induc[ing] rapid trading activity'" in furtherance of a "'pump-and-dump scheme'" in which Meta is not alleged to have any interest. Mot. 16 (quoting and citing Compl. ¶¶ 27, 40, 100). Plaintiffs thus fail to address let alone resolve the flaws in their claims.[4]

### C.    Plaintiffs Do Not Plausibly Allege A UCL Violation (Count II)

Plaintiffs' arguments in support of their UCL claim simply rehash the Complaint's deficient allegations without responding to any of the grounds for dismissal Meta identified.

*First*, Plaintiffs concede their claim under the "unlawful" prong rises or falls with their other claims. Opp. 15. As demonstrated in Meta's Motion and this Reply, Plaintiffs have failed to state any other claim for relief and so their claim under the "unlawful" prong also must fall. *See* Dkt. 29; *accord Riley v. Caliber Home Loans, Inc.*, 2022 WL 2072655, at *2 (9th Cir. June 9, 2022) (recognizing that "a UCL claim stands or falls 'depending on the fate of the antecedent substantive causes of action'"). Plaintiffs' attempt to revive their claim based on the purported violation of Meta's policies simply rehashes their flawed breach-of-contract theory, and it fails for the same reasons. *See* Opp. 15; *infra* pp.13-14.

*Second*, regarding the "fraudulent" prong, Plaintiffs do not dispute that they must, but did not, plead their own reliance on the allegedly deceptive ads and WhatsApp chats. *See* Mot. 18; Opp. 16-17 (arguing that the ads and WhatsApp chats were "likely to deceive the public"). Plaintiffs also do not contest—and therefore concede—that they have failed to meet Rule 9(b)'s heightened pleading standard. Indeed, their Opposition still does not identify the requisite "time,

---

[4] Plaintiffs' failure to dispute that Florida misappropriation law cannot apply in light of the applicable choice-of-law clause in Meta's Terms (Mot. 15; Opp. 12-14) is additionally itself dispositive of Plaintiffs' misappropriation claim under Florida law.

place, and specific content," *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 558 (N.D. Cal. 2019), of a single alleged "imposter professional endorsement" that Meta purportedly "publi[shed] and optimiz[ed]." Compl. ¶ 93. Plaintiffs' failure to identify any allegedly deceptive "impersonation ads," *id.* ¶ 94, "with the particularity required under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard" dooms their claim to the extent premised on such ads. *Yaffe v. JP Morgan Chase Bank N.A.*, 2024 WL 5063820, at *2 (N.D. Cal. Dec. 11, 2024). Plaintiffs also do not dispute that a claim under the "fraudulent" prong requires knowledge of the alleged fraud, nor that Meta did not and could not have had knowledge of the encrypted WhatsApp chats. *See* Mot. 18; Opp. 16-17. Plaintiffs' claim thus also fails to the extent premised on such chats.

*Third*, Plaintiffs do not contest that claims under the "unfair" prong "cannot survive" if the alleged unfair practices "overlap entirely with the business practices addressed in the fraudulent and unlawful prongs" and the "claims under the other two prongs … do not survive." *Parducci v. Overland Sols., Inc.*, 399 F. Supp. 3d 969, 982 (N.D. Cal. 2019) (quoted at Mot. 18). Nor do Plaintiffs dispute that their allegations under the "unfair" prong are the same business practices alleged under the "unlawful" and "fraudulent" prongs. *See* Opp. 15-16. Indeed, Plaintiffs' arguments reinforce this flaw, as their Opposition makes clear their claim under the "unfair" prong is based on the same alleged "impersonation-ad scheme" and deception as their claims under the "unlawful" and "fraudulent" prongs. *Id.* Plaintiffs' claim under the "unfair" prong thus "cannot survive." *HomeLight, Inc. v. Shkipin*, 721 F. Supp. 3d 1019, 1025 (N.D. Cal. 2024).[5]

### D.    Plaintiffs Do Not Plausibly Allege a FDUTPA Violation (Count VII)

Plaintiffs do not engage with Defendants' arguments regarding the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim, and the few contentions Plaintiffs do offer make no headway towards a viable claim. The Court should dismiss the FDUTPA claim with prejudice.

*First*, Plaintiffs do not dispute that (as the Complaint alleges) the choice of California law in Meta's Terms bars their FDUTPA claim. Mot. 19. *Second*, Plaintiffs do not dispute that

---

[5] Despite failing to respond to any of the arguments for dismissal raised in Meta's Motion, Plaintiffs address a standing argument that Meta did not raise. *See* Opp. 17. Meta does not take a position at this time on whether Plaintiffs have adequately alleged lost money or property as is required to establish standing under the UCL.

deception-based FDUTPA claims must satisfy Rule 9(b) or that FDUTPA immunizes those who publish third-party content without "actual knowledge" that it violates the statute. *Id.* 19-20. Yet their Opposition simply labels Meta's alleged conduct as "unfair or deceptive" without identifying with the requisite specificity a single deceptive ad or message Meta disseminated with actual knowledge. *See* Opp. 18-19; *see also supra* pp.11-12. *Third*, regarding their breach-of-contract theory, Plaintiffs recite the allegation that Meta's Terms and policies state "impersonation and deceptive ads … will be removed," Opp. 18, but do not dispute that Meta's Terms and policies include no such promise and in fact expressly disclaim any obligation to remove all potentially violating content, Mot. 20; *supra* pp.4-5. No reasonable consumer could thus think otherwise.

Finally, Plaintiffs cite a nearly twenty-year-old district court opinion to argue they have sufficiently alleged actual harm in the form of "loss of goodwill and professional brand value; diversion of clients and prospective engagements; lost revenue and opportunities; and out-of-pocket costs for monitoring, takedowns, and corrective communications." Opp. 19. Yet, recent caselaw is clear that "harm in the manner of competitive harm, diverted or lost sales, and harm to the goodwill and reputation" do not satisfy FDUTPA's "actual damages" element. *Casa Dimitri Corp. v. Invicta Watch Co. of America, Inc.*, 270 F. Supp. 3d 1340, 1352 (S.D. Fla. 2017) ("actual damages" under FDUTPA is a "term of art, which does not include consequential damages" (quotation marks omitted)); *Keep Santa Rosa Beautiful Inc. v. Butterflies in Motion, Inc.*, 2022 WL 19078118, at *3 (N.D. Fla. Dec. 5, 2022) (similar). Not to mention, Plaintiffs do not allege any facts showing they actually incurred out-of-pocket expenses for monitoring, takedowns, or corrective communications. *See generally* Compl.; *Keep Santa Rosa Beautiful Inc.*, 2022 WL 19078118 at *3 (no actual damages where plaintiff did "not allege with specificity that it incurred expenses for advertising to correct any misapprehension created by Defendants' conduct"). These failures confirm that the FDUTPA claim should be dismissed with prejudice.[6]

### E.    Plaintiffs Do Not Plausibly Allege Breach Of Contract (Count VI)

Plaintiffs' contract claim requires that they allege an enforceable promise Meta purportedly

---

[6] Plaintiffs' "response" regarding whether they are "consumers" or the relevant conduct was "in trade or commerce," Opp. 18, is irrelevant as Meta's Motion raised no such argument.

breached. Their failure to do so is fatal to this claim for the reasons detailed above at pp.4-5. Plaintiffs' offer uncited assertions that Meta's Terms "create a reasonable expectation that Meta" will remove content and that the Terms "imply that if such content is reported or discovered, Meta will take action." Opp. 20. But these assertions not only fail to identify any clear, specific promise, they also ignore that the express disclaimer in Meta's Terms forecloses any contractual obligation to prevent or remove third-party content (and precedent holding as much). *Supra* pp.4-5. Plaintiffs' responses to these arguments, including their challenge to the enforceability of the disclaimer (while not disputing Meta's interpretation of the disclaimer), Opp. 20-21, are foreclosed by precedent and fail for the reasons detailed above and in Meta's Motion. *Supra* pp.4-5; Mot. 8-11.

Plaintiffs cannot evade this conclusion by appealing to the implied covenant of good faith and fair dealing. That implied covenant still requires Plaintiffs to allege "'the specific contractual obligation from which the implied covenant … arose.'" Mot. 21 (quoting *Kroetch v. BAC Home Loan Servs*, 2011 WL 4502350, at \*3 (N.D. Cal. Sept. 27, 2011)). Plaintiffs do not argue otherwise. Nor do they dispute that the implied covenant "'is limited to assuring compliance with the express terms of the contract and cannot be extended to create obligations not contemplated by the contract.'" Mot. 21 (quoting *Kroetch*, 2011 WL 4502350, at \*3). This means Plaintiffs cannot rely on the implied covenant to create an obligation, as they suggest, for Meta "not [to] publish ads" containing the challenged content, "police prohibited deception," or "not profit" from publishing third-party content, because Meta expressly disclaimed any obligation to monitor third-party content as Plaintiffs would have preferred. *See* Opp. 21; *supra* pp.4-5.

### F.   Plaintiffs Do Not Plausibly Allege Unjust Enrichment (Count V)

As with their other claims, Plaintiffs fail to meaningfully respond to Meta's arguments on their unjust enrichment claim. Even assuming the Court construes this claim as a quasi-contract claim for restitution, Opp. 22; Mot. 23, Plaintiffs offer no response to case law holding that "a plaintiff may not 'pursue or recover on a quasi-contract claim if the parties have an enforceable agreement [on] a particular subject matter.'" *Copart, Inc. v. Sparta Consulting, Inc.*, 339 F. Supp. 3d 959, 983-984 (E.D. Cal. Sept. 10, 2018); Mot. 23; *see also Isgur*, 2026 WL 194640, at \*10 ("'[A]s a matter of law, an unjust enrichment claim does not lie where the parties have an

enforceable express contract.'" (quoting *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010)). "Plaintiffs allege the existence of a contract throughout the complaint via Meta's TOS," meaning they cannot bring an "action for unjust enrichment in the alternative" unless they "plead[] facts suggesting the unenforceability or invalidity of the contract at issue." *Isgur*, 2026 WL 194640, at *10. Because they allege no such facts, this claim is barred. Moreover, Plaintiffs do not dispute that this claim is derivative of their other claims, and so must be dismissed if those claims are dismissed because it fails to allege any "distinct impropriety." Mot. 23.

### G. Plaintiffs Fail To State a Declaratory Judgment Act Claim (Count VIII)

Plaintiffs' arguments about the justiciability of their Declaratory Judgment Act claim are entirely nonresponsive to Meta's arguments for dismissal. *See* Opp. 23-24; Mot. 23. Plaintiffs do not dispute that this claim is substantively derivative of their other claims, and "will rise and fall with [those] other claims." Mot. 23 (quoting *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 949 (N.D. Cal. 2023)). Because Plaintiffs' other claims fail, their declaratory claim also fails.

### III. DISMISSAL SHOULD BE WITH PREJUDICE

Plaintiffs request nonprejudicial dismissal to add allegations (1) about the alleged extent of scam ads on Meta's services generally, without alleging any such ads depicted Plaintiffs; (2) that some of Meta's advertising tools rely on artificial intelligence, without alleging that the ads here relied on such tools; and (3) about Meta's efforts to combat scam ads, including from China, without alleging those efforts related to ads depicting Plaintiffs. Even if Plaintiffs had articulated the relevance of these allegations to their claims here—they have not—such amendment would remain futile. None change that the Lanham Act and misappropriation claims do not fall into Section 230's intellectual-property exception. And none change Plaintiffs' failures to plausibly allege an obligation on Meta to remove content or that Plaintiffs' claims seek to hold Meta liable for content admittedly created by third parties. Thus, even if permitted to add these allegations, Plaintiffs' "legal theories [would] fail," making "[f]urther amendment … simply a futile exercise." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020). Particularly because amendment would frustrate the purposes of Section 230, Mot. 24, dismissal should be with prejudice.

Dated: February 20, 2026

Respectfully submitted,

By:*/s/ Sonal N. Mehta*

WILMER CUTLER PICKERING HALE AND DORR LLP
SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
JESSICA LEWIS (SBN 302467)
Jessica.Lewis@wilmerhale.com
LAKSHMI REDDY (SBN 345741)
Lakshmi.Reddy@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

ARI HOLTZBLATT (SBN 354631)
Ari.Holtzblatt@wilmerhale.com
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6443

TALBOT CHILD (SBN 359904)
Talbot.Child@wilmerhale.com
50 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (628) 235-1080

*Attorneys for Defendants Meta Platforms, Inc.; Instagram, LLC; Facebook Operations, LLC; and WhatsApp, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of February, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System.

/s/ Sonal N. Mehta

Sonal N. Mehta