United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN SUDDETH, et al.,

    Plaintiffs,

    v.

META PLATFORMS, INC., et al.,

    Defendants.

Case No. 25-cv-08581-RS

**ORDER GRANTING MOTION TO DISMISS CLASS ACTION COMPLAINT WITH LEAVE TO AMEND**

In this putative class action, licensed investment advisers, planners, brokers, and other financial professionals (Plaintiffs) sued Meta for its role in a fraudulent scheme involving Chinese penny stocks. Plaintiffs aver that Meta facilitated the dissemination of advertisements on its platforms which fraudulently showed them endorsing the stocks. Meta moves to dismiss, arguing that it is immune from liability under section 230 of the Communications Decency Act, 47 U.S.C. § 230(c), and that Plaintiffs have failed to state a claim on the merits. Meta is correct that, at present and in contrast to a recent related case, Plaintiffs largely seek to hold Meta liable "as the publisher or speaker" of content produced exclusively by other parties, barring liability. *Id.* Those claims that are not precluded by section 230 are not sufficiently pleaded. Therefore, the motion is granted with leave to amend.[1]

---

[1] This motion is suitable for resolution without oral argument. *See* Civ. L. R. 7-1(b).

# I. BACKGROUND[2]

Meta is a technology company that, as relevant here, operates Facebook, Instagram, and WhatsApp. Facebook and Instagram's core business is selling advertisements targeted at the platforms' users. According to the complaint, there has been a deluge of criminal scams on Facebook and Instagram. A common variant is the investment scam, wherein fraudsters impersonating reputable financial professionals lure users into "investment groups" on WhatsApp. The fraudsters then push particular stocks on the users. The goal is to induce rapid trading of the stocks to pump up the price. When the price is sufficiently high, the scammers' co-conspirators start dumping the stock—causing the price to collapse to nearly zero. The scammers thereby make out like bandits.

Plaintiffs in this case are a putative class of licensed investment advisers, planners, brokers, and other financial professionals who aver that their identities were used in the fraudulent advertisements and/or in the follow-on WhatsApp groups. In one scheme, scammers promoted the stock of Pheton Holdings Ltd, a Chinese healthcare company trading under the ticker PTHL. The scammers ran advertisements on Facebook and Instagram using the name, headshot, and (fabricated) quotes from John Suddeth, a Florida-based investment professional and the lead plaintiff in this suit. Users that responded to the ad were funneled into a WhatsApp group in which someone posing as Suddeth explained his PTHL recommendation. The scammer sent a message to the group—titled "VIP elite group [] 41"—in which he "recommend[ed] that you savor every opportunity to buy PTHL right now" because he "expect[ed] PTHL shares to reach their second price target of $45 to $50 this week." CAC ¶ 39. The scammer promised that "[o]ur investment team will help everyone track the stock price trend 24 hours a day until all are sold smoothly on August 7." *Id.* PTHL lost roughly 90 percent of its market capitalization in a matter of minutes on July 29, 2025.

Plaintiffs, on behalf of themselves and a putative class of similarly situated financial

---

[2] All well-pleaded averments are accepted as true for purposes of this motion.

ORDER GRANTING MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 25-cv-08581-RS

United States District Court
Northern District of California

professionals, filed this suit against Meta for its role in the scam ads. The complaint is somewhat circumspect about Meta's role in the scams. It avers that "Meta delivered these impersonation ads and funnels to millions of U.S. users" and "allowed [them] to proliferate." CAC ¶¶ 6, 5. It further avers that "Meta reviews ads through automated and human processes and then delivers and optimizes them using machine-learning systems that maximize reach, engagement, or downstream actions." *Id.* ¶ 20. Elsewhere, the complaint notes "[t]he full scope of [Meta's] misconduct . . . is concealed and lies within [its] exclusive possession." *Id.* ¶ 7. Still, the complaint does not aver that Meta participated in the *creation* of the advertisements. It places the blame for that exclusively with the scammers. "Scammers purchased sponsored placements through Meta's Ad Manager, uploaded creative assets falsely depicting or quoting a known advisor, and selected click-to-WhatsApp or similar objectives so that victims who tapped the ad were automatically routed to a WhatsApp chat or group administered by the scammers." *Id.* ¶ 26.

The complaint asserts eight claims for relief: (1) False Endorsement/False Association under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) Unfair Competition under California Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; (3) violation of the right of publicity and misappropriation of name and likeness under Cal. Civ. Code § 3344 and the common law; (4) violation of the right of publicity and misappropriation of name and likeness under Florida law; (5) unjust enrichment; (6) breach of contract; (7) violation of the Florida Deceptive and Unfair Trade Practices Act (FDUPTA), Fla. Stat. § 501.201 *et seq.*; and (8) a claim for declaratory relief, *see* 28 U.S.C. § 2201. Meta moves to dismiss the entire complaint.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint must allege sufficient facts which, if accepted as true, "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### III. DISCUSSION

A. <u>Section 230</u>

Section 230(c)(1) of the Communications Decency Act provides that "[no] provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230. Section 230 is an affirmative defense, so Meta bears the burden of showing it applies. *See Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024). Therefore, Plaintiffs can defeat a motion to dismiss based on section 230 "simply [by] plead[ing] facts demonstrating a potential factual dispute that could affect whether the defense applies." *Rabin v. Google LLC*, 725 F.Supp.3d 1028, 1031 (N.D. Cal. 2024). "Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 (9th Cir. 2018).

The parties agree that Meta is an "interactive computer service." They disagree about whether Plaintiffs seek to treat Meta as a publisher or speaker of someone else's content. As explained, Plaintiffs' central theory is that Meta participated in the fraud by promoting these advertisements using sophisticated targeting technology. That is, "[b]y algorithmically amplifying the false message, Meta developed the content by sharping and enhancing its visibility and impact." Opp. at 7.

This is a similar theory to that pressed in *Dyroff v. Ultimate Software Group*, 934 F.3d 1093 (9th Cir. 2019). There, a mother sued the operator of a website called Experience Project over its role in the death of her son. *See id.* at 1094. Experience Project was "made up of various online communities or group where users anonymously shared their first-hand experiences." *Id.* The plaintiff argued that these features "facilitated," among other things, illegal drugs sales— including the one that ultimately led to the death of her son. *See id.* at 1095. The Ninth Circuit, however, explained that the plaintiff "[could] not plead around Section 230 immunity" by framing

United States District Court
Northern District of California

the "features and functions" employed by Experience Project to disseminate content widely and connect users "as content." *Id.* at 1098. Rather, these features were better understood as "tools meant to facilitate the communication and content of others." *Id.* "They are not content in and of themselves." *Id.* Therefore, the defendant was entitled to section 230 immunity. *See id.* at 1099.

So too in *Doe v. Grindr Inc.*, 128 F.4th 1148 (9th Cir. 2025). In that case, a plaintiff sought to hold Grindr—a dating app targeted at gay and bisexual men—liable after an underage boy was assaulted by men he met on the app. *See id.* at 1152. The theory undergirding the suit "fault[ed] Grindr for facilitating communication among users for illegal activity" and not "suppress[ing] matches and communications between adults and children." *Id.* at 1152, 1153. As in *Dyroff*, the panel explained that the plaintiff's reliance on "'features and functions' of Grindr that were 'meant to facilitate the communication and content of others'" was insufficient to evade section 230 because those "features and functions were 'content neutral' on their own." *Id.* at 1153 (quoting *Dyroff*, 934 F.3d at 1098, 1100). Therefore, section 230 barred the majority of the plaintiff's claims. *See id.*

Many of Plaintiffs' claims here suffer from the same basic defect. Their theory of algorithmic amplification is nothing more than an averment of facilitation. The core illegality—the choice to use Plaintiffs' likeness and falsely represent that they endorsed certain investments—was exclusively undertaken by the scammers. Meta provided those scammers tools to disseminate that fraud that may well have played a role in the success of the ploy. However, as in both *Dyroff* and *Grindr*, Meta's tools were content neutral on their own—it was the *scammers* who chose to manipulate those tools for illicit ends.

In that way, this case is quite unlike recent district court decisions in which suits arising out of social media scams have been permitted to proceed notwithstanding section 230. In *Forrest v. Meta Platforms, Inc.*, a prominent businessman and philanthropist that was impersonated in an online cryptocurrency scam sued Meta. 737 F.Supp.3d 808, 813 (N.D. Cal. June 17, 2024). Crucially, the complaint there averred that Meta did more than just amplify the reach of the fraudulent ads. It averred that Meta *participated in the creation* of those ads by providing tools

that themselves "affect ad content in a manner that could at least potentially contribute to their illegality." *Id.* at 818. There was thus a fact dispute over whether and to what extent Meta had "active involvement in deciding what the ads look like." *Id.* (internal quotation marks omitted).

Even more recently, in *Bouck v. Meta Platforms, Inc.*, a putative class of investors sued Meta for their alleged role in another pump-and-dump scheme involving Chinese penny stocks. *See* case no. 25-cv-05194-RS. Meta moved to dismiss, invoking section 230, but its motion was denied because the plaintiffs averred that Meta contributed materially to the development of the ads by offering generative-AI tools that developed the ultimate content of the fraudulent ads. Meta's role in that scheme, therefore, allegedly went beyond offering neutral tools that promoted content developed exclusively by the scammers—Meta, at least according to the complaint, was a genuine co-conspirator *in the creation of the offending content*. Plaintiffs have failed to aver a similar level of complicity here.

Section 230 thus bars any claim which, at bottom, seeks to hold Meta liable for the damage done by the content of the fraudulent ads. Plaintiffs try to recast some of their claims as reliant on other theories or otherwise not subject to section 230 immunity, but those efforts are largely unpersuasive. First, Plaintiffs argue that their Lanham Act claim (claim one) and their state law right of publicity claims (claims three and four) fall within the intellectual-property exception to section 230. *See* 47 U.S.C. § 230(e)(2) (providing that "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property"). That is incorrect. In *Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, the Ninth Circuit held "that the intellectual property exception contained in § 230(e)(2) encompasses claims pertaining to an established intellectual property right under federal law, like those inherent in a patent, copyright, or trademark." 946 F.3d 1040, 1053 (9th Cir. 2019). Plaintiffs' Lanham Act claim does not implicate any such right in intellectual property. In *Perfect 10, Inc. v. CCBill LLC*, the Ninth Circuit explained that "inclusion of rights protected by state law within the 'intellectual property' exemption would fatally undermine the broad grant of immunity provide by the [Communications Decency Act]." 488 F.3d 1102, 1119 & n.5 (9th Cir. 2007). Plaintiffs, tellingly, fail to cite either

United States District Court
Northern District of California

of those binding authorities.

Plaintiffs next contend that their statutory consumer protection claims (claims two and seven) are "not premised on Meta's role as a mere publisher." Opp., at 5. Instead, Plaintiffs characterize these claims as "based on Meta's own business practices, specifically its misrepresentations and omissions about platform safety and its failure to combat known scams." *Id.* In *Grindr*, the plaintiff similarly asserted "that Grindr had a duty to warn Doe about the risks of child exploitation on the app." 128 F.4th at 1154. The Ninth Circuit held that claim barred by section 230, explaining that "an interactive computer service provider has a duty to warn a user when the provider is aware of a 'known conspiracy operating independent of the site's publishing function.'" *Id.* (quoting *Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1181 (9th Cir. 2024)). By contrast, there is no duty to warn simply because third parties are using a provider's services for illegal purposes. As in *Grindr*, Plaintiffs here have not averred that Meta had knowledge of a conspiracy developed independent of its role as a publisher of content, so section 230 bars these claims. *See Grindr*, 128 F.4th at 1154.

## B. Remaining Claims

Though section 230 bars most of Plaintiffs' claims as presently pleaded, two remain. First, Plaintiffs bring a claim for breach of contract. They aver that Meta breached the terms of its contractual relationship with Plaintiffs "by approving, delivering, optimizing, and monetizing" the fraudulent ads. The complaint does not quote the precise language from the Terms of Service that Plaintiffs believe Meta breached, but Meta offers the relevant provision as an exhibit to its motion. *See* Lewis Decl., Ex. A, B, C. That language is replete with obligations imposed on *advertisers* to, for example, "comply with Community Standards on Fraud, Scams, and Deceptive Practices" and refrain from posting ads that "promote products, services, schemes or offers using identified deceptive or misleading practices, including those meant to scam people out of money or personal information." *Id.*, Ex. B, at 10. It, however, does not contain any language that purports to obligate *Meta* to do anything specific with respect to fraudulent ads. Where it does reference Meta's conduct, the Terms of Service seem to grant Meta rights against infringing conduct, not specific

United States District Court
Northern District of California

United States District Court
Northern District of California

responsibilities to take any particular action. *See id.*, at 22 ("We reserve the right to reject, approve or remove any ad for any reason, in our sole discretion . . ."). Elsewhere, the Terms of Service speak in aspirational terms, explaining that Meta "aim[s] to protect users and businesses from being deceived out of their money . . . by removing content and combatting behavior that purposefully employs deceptive means." *Id.*, Ex. A., at 1. Missing, still, is a *promise* to do anything specific. Absent such a promise, Plaintiffs' breach of contract claim cannot proceed. *See Lloyd v. Facebook*, 2022 WL 4913347, at *9 (N.D. Cal., October 3, 2022) (explaining that "merely stating that Facebook does not allow users to post harmful content and that they will remove them is mere[ly] 'a general monitoring policy'" that does not create a contractual promise); *Bouck*, case no. 25-cv-05194, dkt. 61, at *13 (N.D. Cal., March 24, 2026) (same).

Plaintiffs similarly cannot maintain a claim for breach of the implied covenant of good faith and fair dealing. The covenant of good faith and fair dealing, which is impliedly a part of every contract, requires "that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Carson v. Mercury Ins. Co.*, 210 Cal. App. 4th 409, 429 (2012) (internal quotation marks omitted). The purpose of the covenant is to "mak[e] effective the agreement's promises." *Id.* As in *Bouck*, Plaintiffs "are not invoking the covenant of good faith and fair dealing because they were unable to realize the benefits of the promises in the contract, they are invoking it to create new promises. That the covenant cannot do." case no. 25-cv-05194, dkt. 61, at *14 (N.D. Cal., March 24, 2026). Therefore, Plaintiffs' claim for breach of contract is dismissed.

Second, Plaintiffs bring a claim for unjust enrichment. Though there is no standalone claim for unjust enrichment or restitution under California law, those terms "describe the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (internal quotation marks omitted). "The return of that benefit is the remedy typically sought in a quasi-contract cause of action." *Id.* (internal quotation marks omitted). Therefore, "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract

ORDER GRANTING MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 25-cv-08581-RS

claim seeking restitution." *Id.* (internal quotation marks omitted).

Under California law, "the elements for a claim of unjust enrichment [are] receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000). Here, Plaintiffs aver that it is unjust for Meta to retain the proceeds of its advertising sales because "the revenues were generated by unlawful and deceptive campaigns that violated Plaintiffs' statutory and common-law rights, contravened Defendnats' own policies, and persisted after Defendants had notice of impersonation-driven scams." Opp., at 23. Thus, it appears Plaintiffs' assertion of unjustness is predicted on the existence of another legal violation. Because none of their asserted legal violations can yet survive a motion to dismiss, their claim for unjust enrichment fails as well.

Finally, Plaintiffs bring two claims that are fully derivative of their other claims. First, they assert a claim for "unlawful" business practices under California unfair competition law. If Plaintiffs cannot establish a predicate legal violation, they cannot bring a UCL claim for unlawful business practices. *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383, (2012), *as modified on denial of reh'g* (Feb. 24, 2012) ("Section 17200's unlawful prong borrows violations of other laws . . .and makes those unlawful practices actionable under the UCL.") (internal quotation marks omitted). Second, Plaintiffs request a declaratory judgment. A declaratory judgment is a form of relief, not a cause of action. Unless Plaintiffs can establish Meta violated the law, its request for declaratory relief cannot proceed. Only if Plaintiffs can establish that predicate violation is it appropriate to consider whether the other requirements for declaratory relief are present.

## IV. CONCLUSION

For the foregoing reasons, Meta's motion to dismiss is granted with leave to amend. Any amended complaint shall be filed within 21 days of the date of this order.

**IT IS SO ORDERED**.

ORDER GRANTING MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 25-cv-08581-RS

9

Dated: March 24, 2026

_____
RICHARD SEEBORG
Chief United States District Judge