**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**
SONAL N. MEHTA (SBN 222086)
JESSICA LEWIS (SBN 302467)
LAKSHMI REDDY (SBN 345741)
Sonal.Mehta@wilmerhale.com
Jessica.Lewis@wilmerhale.com
Lakshmi.Reddy@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

ARI HOLTZBLATT (SBN 354631)
Ari.Holtzblatt@wilmerhale.com
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6443

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA,
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN SUDDETH and SARA PERKINS,<br>                    Plaintiffs,<br><br>    v.<br><br>META PLATFORMS, INC., INSTAGRAM, LLC,<br>FACEBOOK OPERATIONS, LLC, and<br>WHATSAPP, LLC,<br>                    Defendants. | Case No. 3:25-cv-08581-RS<br><br>**DEFENDANTS' REPLY IN**<br>**SUPPORT OF MOTION TO**<br>**DISMISS AMENDED COMPLAINT**<br><br>Judge: Hon. Richard Seeborg<br>Courtroom 12, 19th Floor<br>Date: August 6, 2026<br>Time: 1:30 p.m. |

**TABLE OF CONTENTS**

I.  Plaintiffs Cannot Circumvent Section 230 ...........................................................................1

A.  Plaintiffs Do Not Plausibly Allege Material Contribution .......................................2

1.  Plaintiffs concede Meta did not contribute to WhatsApp group content and do not plausibly allege they were impersonated in ads ............2

2.  Even if Plaintiffs allege ad-based impersonation, they conceded such impersonation was undertaken by scammers—not Meta ...................3

3.  Plaintiffs do not plausibly allege Meta's Ad Tools contributed to any choice to use Plaintiffs' identities .........................................................4

B.  Plaintiffs' Claims Would Impose Liability On Meta As A Publisher ....................5

II. Plaintiffs Fail To Allege Essential Elements Of Their Claims ...........................................6

A.  Plaintiffs Do Not Plausibly Allege A Lanham Act Violation (Count I)..................6

B.  Plaintiffs Do Not Plausibly Allege Misappropriation (Counts III and IV)..............8

C.  Plaintiffs Do Not Plausibly Allege A UCL Violation (Count II) ............................9

D.  Plaintiffs Do Not Plausibly Allege A FDUTPA Violation (Count VII)................10

E.  Plaintiffs Do Not Plausibly Allege Breach Of Contract (Count VI) ......................11

F.  Plaintiffs Do Not Plausibly Allege Negligence (Count VIII)................................12

1.  Plaintiffs do not plausibly allege the element of duty................................12

2.  Plaintiffs do not plausibly allege proximate cause ...................................13

3.  Plaintiffs' negligence claim is barred by the economic loss rule..............14

G.  Plaintiffs Do Not Plausibly Allege Unjust Enrichment (Count V)........................15

III. Dismissal Should Be With Prejudice..................................................................................15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ...............................................................................10

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Management, Inc.*,
744 F.3d 595 (9th Cir. 2014) ...............................................................................3, 4, 15

*Balsam v. Tucows Inc.*,
627 F.3d 1158 (9th Cir. 2010) ...............................................................................12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................3

*Bouck v. Meta Platforms, Inc.*,
2026 WL 810036 (N.D. Cal. Mar. 24, 2026).......................................................1, 4, 11, 12

*Cyph, Inc. v. Zoom Video Communications, Inc.*,
642 F. Supp. 3d 1034 (N.D. Cal. 2022) ...............................................................................2

*Dent v. National Football League*,
968 F.3d 1126 (9th Cir. 2020) ...............................................................................13

*Doe v. Grindr Inc.*,
128 F.4th 1148 (9th Cir. 2025) ...............................................................................6

*Doe v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016) ...............................................................................13

*Downing v. Abercrombie & Fitch*,
265 F.3d 994 (9th Cir. 2001) ...............................................................................7

*Dyroff v. Ultimate Software Group, Inc.*,
934 F.3d 1093 (9th Cir. 2019) ...............................................................................4

*Federal Trade Commission v. Neovi, Inc.*,
604 F.3d 1150 (9th Cir. 2010) ...............................................................................9, 10

*Gilbert v. MoneyMutual, LLC*,
318 F.R.D. 614 (N.D. Cal. 2016)...............................................................................9, 10

*Hart v. Amazon.com, Inc.*,
191 F. Supp. 3d 809 (N.D. Ill. 2016) ...............................................................................7

*Hikma Pharmaceuticals USA Inc. v. Amarin Pharma, Inc.*,
608 U.S. __, 146 S. Ct. 1391 (2026)...............................................................................3

*Holley v. Gilead Sciences, Inc.*,
    379 F. Supp. 3d 809 (N.D. Cal. 2019) ...............................................................................14

*In re Acellion, Inc. Data Breach Litigation*,
    713 F. Supp. 3d 623 (N.D. Cal. 2024) ...............................................................................12

*Isgur v. Meta Platforms, Inc.*,
    2026 WL 194640 (N.D. Cal. Jan. 26, 2026) .......................................................................12

*Jordan v. Paul Financial, LLC*,
    745 F. Supp. 2d 1084 (N.D. Cal. 2010) ...............................................................................9

*Kournikova v. General Media Communications Inc.*,
    278 F. Supp. 2d 1111 (C.D. Cal. 2003) ...........................................................................7, 8

*Kroetch v. BAC Home Loan Services*,
    2011 WL 4502350 (N.D. Cal. Sept. 27, 2011) ...................................................................12

*Lichtman v. Siemens Industry Inc.*,
    16 Cal. App. 5th 914 (2017) ...............................................................................................13

*Lierboe v. State Farm Mutual Automobile Insurance Co.*,
    350 F.3d 1018 (9th Cir. 2003) ..............................................................................................6

*Marrache v. Bacardi U.S.A. Inc.*,
    17 F.4th 1084 (11th Cir. 2021) ...........................................................................................11

*MiCamp Solutions, LLC v. Visa Inc.*,
    2025 WL 3548685 (N.D. Cal. Dec. 11, 2025)..................................................................3, 4

*Parents for Privacy v. Barr*,
    949 F.3d 1210 (9th Cir. 2020) ......................................................................................15, 16

*Poublon v. C.H. Robinson Co.*,
    846 F.3d 1251 (9th Cir. 2017) ............................................................................................15

*Rodriguez v. Recovery Performance & Marine, LLC*,
    38 So. 3d 178 (Fla. Dist. Ct. App. 2010) ...........................................................................11

*Sheen v. Wells Fargo Bank, N.A.*,
    12 Cal. 5th 905 (2022) ........................................................................................................14

*Suddeth v. Meta Platforms*,
    2026 WL 810252 (N.D. Cal. Mar. 24, 2026)................................................1, 4, 5, 6, 12, 15

*Waits v. Frito-Lay, Inc.*,
    978 F.2d 1093 (9th Cir. 1992) ..............................................................................................8

*Waller v. Truck Insurance Exchange, Inc.*,
    11 Cal. 4th 1 (1995) ......................................................................................................11, 12

## STATUTES, RULES, AND REGULATIONS

15 U.S.C. § 45 (FTC Act) ................................................................................................................9, 10

Cal. Civ. Code § 3344 ..............................................................................................................................9

Fed. R. Civ. P. 9(b) ............................................................................................................................9, 10

Plaintiffs yet again try to change their theory of the case. Despite removing from the Amended Complaint ("AC") any specific allegation that either Plaintiff was impersonated in any ad, they now insist their theory is based on impersonation in *ads*, not WhatsApp groups. The reason for this pivot is obvious; Plaintiffs concede Meta did not contribute to impersonation content in WhatsApp messages, so Section 230 bars claims based on any such content. And Plaintiffs cannot avoid Section 230 unless they plausibly allege Meta contributed to the "core illegality" in this case: the "choice to use Plaintiffs' likeness and falsely represent that they endorsed certain investments," *Suddeth v. Meta Platforms*, 2026 WL 810252, at *3 (N.D. Cal. Mar. 24, 2026).

Pivoting to the challenged ads does not circumvent Section 230 for three reasons. *First*, despite the Opposition's contrary assertions, the AC itself does not plausibly allege any ad impersonated Plaintiffs. Indeed, Plaintiffs *removed* such allegations. And many of the Opposition's factual assertions are completely absent from the AC. *Second*, even if the AC did plausibly allege Plaintiffs were impersonated in ads, Plaintiffs are prohibited from contradicting their prior allegation that the scammers alone were responsible for the choice to use Plaintiffs' identities. *Third*, none of the new allegations about Meta's ad tools suggests that those tools made the choice to use Plaintiffs' identities. Because the AC still does not allege material contribution and would impose liability on Meta for allegedly failing to prevent third parties from misusing Plaintiffs' identities, Section 230 bars their claims, as the Court previously held. These same defects also prevent Plaintiffs from plausibly alleging essential elements of each of their claims.

The AC does not "plead[] the *Bouck* theory in full." Opp. 1. There, the basis for liability was that false ad content "tricked [the plaintiffs] into the investment scheme." *Bouck v. Meta Platforms, Inc.*, 2026 WL 810036, at *5 (N.D. Cal. Mar. 24, 2026). Here, the alleged harm stems from misusing Plaintiffs' identities. The AC does not change the conclusion that the scammers were responsible for that "core illegality," *Suddeth*, 2026 WL 810252, at *3. It must be dismissed.[1]

## I.    PLAINTIFFS CANNOT CIRCUMVENT SECTION 230

Plaintiffs concede Section 230's first prong is satisfied; Meta is an interactive computer service provider. *See* Mot. 6-7; Opp. 5. Their arguments on the remaining prongs are meritless.

---

[1] All emphasis is added and internal quotations are omitted unless otherwise noted.

A.    **Plaintiffs Do Not Plausibly Allege Material Contribution**

1.    **Plaintiffs concede Meta did not contribute to WhatsApp group content and do not plausibly allege they were impersonated in ads**

Plaintiffs concede Meta did not contribute to the impersonation content allegedly generated by scammers in WhatsApp group chats. Mot. 7-8. As the AC alleges—and Plaintiffs do not dispute—"Meta did not create, host, or moderate" the content "using stolen identities" that was "executed inside WhatsApp broadcast groups administered by the scammers." AC ¶ 29.

Instead, Plaintiffs try to shift back to a theory of liability premised on impersonation in ads, littering their Opposition with such assertions. But these assertions appear nowhere in the AC, and "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Cyph, Inc. v. Zoom Video Commc'ns, Inc.*, 642 F. Supp. 3d 1034, 1043 (N.D. Cal. 2022). The Opposition asserts, for example, that "Meta's AI produced the FINRA credentials, advisory titles, and fabricated endorsement quotes" that supposedly appeared in ads. Opp. 6, 7, 12-14, 17, 24. The AC does not say that. Most of these assertions have no citation, and where citations do appear, they offer no support. For example, Plaintiffs cite AC ¶ 81, which alleges Meta resides in California, and ¶ 87, which alleges impersonation only in WhatsApp or Messenger group chats, not in "financial scam ads." Opp. 7. They similarly claim "Meta's AI-generated ads used Plaintiffs' names [and] headshots." *Id.* at 5 (citing AC ¶¶ 42, 52-57). The AC does not say that either. To the contrary, Plaintiffs removed from AC ¶ 42 their prior allegations that impersonation appeared in ads. *See* Mot. 5; *infra* p.3. And AC ¶¶ 52-57 describe "impersonation content cross-promoted across *chats*," and other conduct by third-party scammers in WhatsApp group chats—not ads. And even Plaintiffs' newly added specific allegations about how Meta supposedly "generated" content set forth a four-step process that never involves choosing a person to depict, much less a choice to generate a specific person's FINRA credentials. *See* AC ¶¶ 42, 47; *infra* pp.4-5.

This problem is pervasive. Plaintiffs cite AC ¶ 49 to argue that Meta "used" their identities, Opp. 2, 13, 15, but AC ¶ 49 alleges only that Plaintiffs "did not consent" to being impersonated in ads or WhatsApp groups—not that they were in fact impersonated in either. Likewise, AC ¶ 23 (Opp. 2-3, 13, 15) alleges only that scammers used a variety of Meta tools to run a "financial scam"

that used Plaintiffs' identities to pump-and-dump securities; it does not allege that the tools chose Plaintiffs' identities to be depicted in ads—or that their identities were used in ads at all. AC ¶ 68 (Opp. 13) is a proposed class definition, not a factual allegation. And AC ¶ 36 (Opp. 13) does not refer to Plaintiffs at all, much less that Plaintiffs were depicted in any ads.

Plaintiffs make AC ¶¶ 42 and 47 the centerpiece of their argument that they alleged impersonation in ads. *See* Opp. 3-4, 6-7, 21, 25. That makes no sense. Those are the very paragraphs from which Plaintiffs *removed* such prior allegations. Mot. 5; *compare* Dkt. 1 ¶ 39 ("ads … using … Plaintiff Suddeth's name…") *with* AC ¶ 42 ("sponsored ads … funneled victims to … WhatsApp and Messenger groups. *There*, Plaintiff Suddeth's name …."); *compare* Dkt. 1 ¶ 43 ("Perkins was … impersonated in a series of ads[.]") *with* AC ¶ 47 ("Perkins was … impersonated in WhatsApp chat groups"). Plaintiffs' "causal logic" that AC ¶ 47 nevertheless alleges impersonation in ads because of a reference to "Adviser B" *in WhatsApp* groups or the use of the word "similarly," Opp. 3, defies the "common sense" inquiry courts apply at the motion to dismiss stage, *MiCamp Sols., LLC v. Visa Inc.*, 2025 WL 3548685, at *3 (N.D. Cal. Dec. 11, 2025). Plaintiffs could have expressly alleged Perkins was impersonated in ads; instead, they removed that allegation and now belatedly seek some textual basis to cover their tracks.

In the face of that gamesmanship, Plaintiffs cannot save their claims with AC ¶ 40, the AC's *only* allegation that "each Plaintiff was impersonated … in paid advertisements." Surviving a motion to dismiss "requires more than labels and conclusions," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and Plaintiffs make no attempt to square this allegation with their *removal* of every specific allegation concerning impersonation in ads. Mot. 5. Plaintiffs thus have not, as they must, plausibly alleged "more than a sheer possibility" that they were depicted in ads, as opposed to WhatsApp chats, and the contrary assertions in their Opposition should be rejected. *Hikma Pharm. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. __, 146 S. Ct. 1391, 1399 (2026).

### 2. Even if Plaintiffs allege ad-based impersonation, they conceded such impersonation was undertaken by scammers—not Meta

Even if the AC alleges ad-based impersonation—it does not—Plaintiffs cannot save their case by contradicting their prior admissions. A "party cannot amend pleadings to directly

contradic[t] an earlier assertion made in the same proceeding." *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014). A court may consider inconsistencies in allegations "as part of its 'context-specific' inquiry based on its judicial experience and common sense to assess whether an amended complaint plausibly suggests entitlement to relief." *MiCamp Sols.*, 2025 WL 3548685, at *3. And courts rightly have "serious concerns" about the "gamesmanship" of a plaintiff "remov[ing] … its previous factual allegations in a transparent effort to avoid the Court's prior holding." *Id.* at *12.

Plaintiffs admit they are engaged in exactly that sort of gamesmanship. They admit "[t]he original complaint alleged scammers 'uploaded creative assets falsely depicting or quoting a known advisor.'" Opp. 25; *see also* Dkt. 1 ¶¶ 20, 26. Plaintiffs then scrubbed these key admissions and argue the AC now "alleg[es] Meta's AI as the content creator," all to "directly respond to" the Court's prior holding that "the choice to use Plaintiffs' likeness and falsely represent that they endorsed certain investments … was exclusively undertaken by the scammers," *Suddeth*, 2026 WL 810252, at *3. *See* Opp. 25. Accordingly, Plaintiffs' amended allegations—purportedly "alleging Meta's AI as the content creator"—are implausible, directly contradicting the original complaint.

**3.    Plaintiffs do not plausibly allege Meta's Ad Tools contributed to any choice to use Plaintiffs' identities**

Even if the Court considers Plaintiffs' shifting, unsupported theory that Meta contributed to ads that impersonated Plaintiffs, Plaintiffs offer no allegations like those the "Court credited … in *Bouck*," Opp. 6. The core illegality in *Bouck*, brought by alleged victims of investment scams, was that ads contained "false statements … that induced [users] to click on" them, and to which Meta's ad tools had allegedly contributed. 2026 WL 810036, at *4-5. But here, "'what makes the displayed content illegal or actionable,'" *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1099 (9th Cir. 2019), is not that it contains language fraudulently endorsing certain investment groups or securities, as in *Bouck*, but that it allegedly impersonates Plaintiffs and attributes endorsements to them. The AC is devoid of any allegation that Meta's ad tools contributed to the choice of *whom* to depict in an ad, and thereby to whom to attribute any endorsement language.

The Opposition claims the AC alleges Meta "created the ads" in four steps, but none

involves selecting an actual person to be depicted (much less Plaintiffs). *See* Opp. 5-6 (citing AC ¶ 42). Two of the steps—(c) targeting audiences and (d) testing variants—do not contribute at all to ad content; they are instead "nothing more than an averment of facilitation." *Suddeth*, 2026 WL 810252, at *3. And Plaintiffs concede the alleged step (b) involving the Dynamic Creative tool merely "assembled" and "resized" images that were first uploaded by the scammers—it is not alleged to have created or selected any image. AC ¶¶ 20(a), 42.

As for step (a) involving Advantage+, Plaintiffs allege at most that the "language was produced or rewritten … from a short foreign-language seed phrase" *provided by the scammers*. AC ¶ 42; *see also* AC Ex. E at 6 (language variants "inspired by [users'] original ad creative"). Again, this alleges nothing about the choice to use Plaintiffs' likenesses, nor to attribute any ad text to Plaintiffs. Thus, even if Advantage+ worked exactly as Plaintiffs claim, the AC still does not allege the tool contributed to the "core illegality" of impersonating Plaintiffs. And, as discussed *supra* p.2, Plaintiffs' assertion that Advantage+ "produced the FINRA designations, investment-advisory titles, and fabricated endorsement quotes," Opp. 7, is never alleged by the AC. Thus, as before, "the choice to use Plaintiffs' likeness and falsely represent that they endorsed certain investments[] was exclusively undertaken by the scammers." *Suddeth*, 2026 WL 810252, at *3.

**B.    Plaintiffs' Claims Would Impose Liability On Meta As A Publisher**

On Section 230's second prong, the Opposition confirms each claim would impose liability on Meta as a publisher. Plaintiffs do not contest that their Florida misappropriation, unjust enrichment, and FDUTPA claims would satisfy this prong. Plaintiffs' cursory and vague explanations as to the remaining claims are unavailing.

Plaintiffs appear to argue that most claims do not treat Meta as a publisher because they challenge Meta's generative AI outputs rather than third-party content. Opp. 8. They argue, e.g., that their Lanham Act, California misappropriation, contract, and negligence claims are based on Meta's alleged duties to not "generat[e]" or "creat[e]" "impersonation ads." *Id.* at 8-9. But these arguments collapse Section 230's second and third prongs to rehash the same meritless arguments, untethered to any allegation, that Meta materially contributed to impersonation ads. *Supra* pp.2-5.

As to the UCL claim, Plaintiffs argue in one sentence that Meta "discharges these duties

by not making false safety representations." Opp. 9. But the purported "falsity" of the unspecified "safety representations" is based on Meta's purported "deliver[y]" of "scam advertisements," AC ¶ 99, meaning that "discharging" the duty "would require [Meta] to monitor third-party content," satisfying Section 230's second prong. *Doe v. Grindr Inc.*, 128 F.4th 1148, 1153 (9th Cir. 2025).

Finally, Plaintiffs argue their contract and UCL claims seek to hold Meta liable for its own promises or representations. Opp. 9. But they still do not plausibly allege Meta ever represented it would "take any particular action." *Suddeth*, 2026 WL 810252, at *4. *See infra* pp.11-12.

## II.    PLAINTIFFS FAIL TO ALLEGE ESSENTIAL ELEMENTS OF THEIR CLAIMS

### A.    Plaintiffs Do Not Plausibly Allege A Lanham Act Violation (Count I)

Plaintiffs' Opposition abandons any argument that their depiction in WhatsApp chats supports their Lanham Act claim. But that is the only use of their likenesses actually alleged in the AC. *See* Mot. 4, 13; *supra* pp.2-3. Plaintiffs backpedal from the deliberate excision from the AC of any alleged use of their likenesses in ads, but the allegations they cite provide no support. *See* Opp. 13 (citing AC ¶¶ 23, 36, 40, 49, 68); *see supra* pp.2-3. Not one of those paragraphs alleges Plaintiffs were actually depicted in any advertisement, and Plaintiffs may not survive dismissal based on what might be true as to other class members, *see Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022-1023 (9th Cir. 2003) (where a named plaintiff has no claim, a putative class action must be dismissed). Because Plaintiffs abandon any claim based on their depiction in WhatsApp chats but do not allege their depiction in ads, their claim fails for that reason alone.[2]

But even if Plaintiffs had alleged their depiction in advertisements, that still would not support their claim. Plaintiffs admit, as they must, that the crucial element of a Lanham Act claim is the use of a plaintiff's likeness to falsely suggest endorsement of *the defendant's* goods or services. Opp. 12. Attempting to shoehorn their allegations into that requirement, Plaintiffs argue that investment-related ads depicting their likenesses falsely suggested that "Plaintiffs endorse Meta's advertising platform as a reliable vehicle for professional investment guidance." *Id.* at 13. That theory (1) ignores the relevant test for consumer confusion, (2) is undermined by Plaintiffs' own arguments, and (3) is contrary to relevant case law.

---

[2] Plaintiffs also abandon any theory of contributory false endorsement. *See* Opp. 15.

*First*, Plaintiffs do not even attempt to apply the established test for likelihood of consumer confusion to explain how use of their likenesses in investment-related ads is likely to cause confusion as to their endorsement *of Meta. See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007-1008 (9th Cir. 2001). Applying that test reveals the flaws in Plaintiffs' theory. For example, a primary consideration is "the relatedness of the fame or success of the plaintiff to the defendant's product." *Id.* at 1007. Here, to the extent Plaintiffs have any fame, it is not related to online "advertising platform[s]," Opp. 13. Nor is there "evidence [or allegation] of actual confusion." *Downing*, 265 F.3d at 1008. Rather, the *only* allegations in the AC regarding consumer confusion concern confusion about Plaintiffs' endorsement of the advertised securities or investment groups. *E.g.*, AC ¶ 3 ("scammers … impersonat[ed] real financial professionals … falsely suggesting these professionals endorse specific securities"); ¶ 40 ("This content falsely suggested Plaintiffs endorsed … PTHL"); ¶ 89 ("use of Plaintiffs' … likenesses" caused "consumer confusion" as to their "approval of the advertised securities, promotions, groups or services").

*Second*, Plaintiffs' Opposition confirms that their claim as pleaded is premised on alleged confusion regarding their endorsement of securities, not Meta. As Plaintiffs put it, "[t]he question is whether AI-generated ads that displayed Plaintiffs' [likenesses] were likely to cause investors to believe that Suddeth and Perkins sponsored, approved, or were affiliated with the promoted investment opportunities." Opp. 14. Under Plaintiffs' own formulation, then, their claim must fail because the "promoted investment opportunities" are not Meta's own products or services. Accordingly, Plaintiffs have not plausibly alleged a likelihood of confusion regarding their endorsement of *Meta*'s goods or services, and so their Lanham Act claim against Meta fails.

*Third*, case law establishes that publishing an ad for a third-party good or service that depicts another individual is not likely to cause confusion regarding that individual's endorsement of the publisher, as opposed to the provider of the advertised good or service. In *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809 (N.D. Ill. 2016), the court held that the fact that third parties sold unauthorized copies of the plaintiff's book on Amazon did "not imply that Plaintiff has endorsed Amazon or has any specific affiliation with Amazon." *Id.* at 819.

Plaintiffs' cases (Opp. 13) are not to the contrary, as neither involved claims against the

distributor of ads for third-party goods or services. *See Kournikova v. Gen. Media Commc'ns Inc.*, 278 F. Supp. 2d 1111, 1120 (C.D. Cal. 2003) (defendant used plaintiff's likeness to promote "*its* June 2002 edition of Penthouse*"); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1097-1098 (9th Cir. 1992) (Frito-Lay used song imitating Tom Waits in Frito-Lay product ad).

Separately, though the failure to allege that any relevant ads suggested Plaintiffs' endorsement of Meta's goods or services is itself dispositive, their assertions regarding Meta's purported "use" of Plaintiffs' likenesses also fail. Again, the AC does not allege Meta's AI tools generated Plaintiffs' images or credentials. *Supra* pp.2-5. Nor is there any allegation that "Meta's algorithm *selected* Plaintiffs' credentials" to "maximize[] conversion rates among Plaintiffs' own clients," to whom the ads were purportedly "targeted," Opp. 14-15. The cited AC paragraphs allege only that Meta delivered ads to target audiences based on user-browsing data, including from "financial-services sites." AC ¶¶ 42(c), 44. There is no allegation in the AC that ads featuring Plaintiffs' likenesses were targeted to Plaintiffs' clients, or that ad targeting had any relationship to who was depicted in a particular ad—rather than simply the subject matter of the ad.

### B.     Plaintiffs Do Not Plausibly Allege Misappropriation (Counts III and IV)

Plaintiffs' attempts to save their misappropriation claims fail for similar reasons. They again abandon any claim based on the use of their likenesses in WhatsApp chats, but again fail to identify any paragraph of the AC actually alleging the use of their likenesses in ads. *See* Opp. 15 (citing AC ¶¶ 23, 40, 49); *see also supra* pp.2-3 (discussing these allegations). Their misappropriation claims, like the Lanham Act claim, fail for this reason alone.[3]

Even if the AC alleged the use of Plaintiffs' likenesses in ads, the misappropriation claims still fail because Plaintiffs have not plausibly alleged *Meta*'s use (as opposed to the scammers' use) of their likenesses, nor that any such use was aimed at *Meta*'s commercial advantage.

*First*, Plaintiffs simply assert, with no citation to any supporting allegation, that Meta's AI tools "produced" Plaintiffs' likenesses. Opp. 15-16. As already explained, Plaintiffs cite nothing because no such allegation exists in the AC. *Supra* pp.2-6.

---

[3] Plaintiffs' Opposition addresses their misappropriation claim under only California law, abandoning any argument under Florida law. *See* Opp. 15-16.

*Second*, Plaintiffs argue the use of their likenesses was aimed at Meta's commercial advantage because Meta's algorithms "selected" "Plaintiffs' credentials" and then "targeted" ads to Plaintiffs' clients to drive "higher conversions." Opp. 16. Again, that theory is unsupported by the AC. The AC paragraphs on which Plaintiffs rely simply explain at a general level how Meta's Advantage+ tool works, AC ¶ 20(d), and allege that scammers used Advantage+ to create the ads that "drove users to the WhatsApp groups where Plaintiff Suddeth was impersonated" and to target those ads using data from Meta Pixel, saying nothing of any targeting to Plaintiffs' customers, *id.* ¶¶ 42(c), 44; *supra* pp.2-3. And that is fatal to Plaintiffs' reliance on *Forrest*, as Plaintiffs' unsupported arguments are no substitute for well-pleaded allegations that Meta derived incremental benefit from the depiction of Plaintiffs' likenesses in any ads.

**C.      Plaintiffs Do Not Plausibly Allege A UCL Violation (Count II)**

Plaintiffs' UCL arguments do not address Meta's arguments and instead depart from the AC to assert new, unalleged theories, none of which state a claim under the statute's three prongs.

*First*, Plaintiffs do not plausibly allege any predicate violation to support the "unlawful" UCL prong. The AC relies on the Lanham Act, Cal. Civil Code § 3344, breach of contract, and FDUTPA. AC ¶¶ 99-100. Plaintiffs now abandon FDUTPA, Opp. 17, and the remaining predicates fail for the reasons set out in Meta's Motion and this brief.

Unable to address their alleged claims' defects, Plaintiffs instead pivot to a new theory— that Meta violated Section 5 of the FTC Act. Opp. 17. That theory is not alleged at all in the AC, much less alongside particularized factual allegations, and should be dismissed on that basis alone. In *Jordan v. Paul Fin., LLC*, 745 F. Supp. 2d 1084 (N.D. Cal. 2010), the court dismissed a UCL claim where "the FAC does no more than mention the FTC Act" and "ma[d]e[] no effort to tie the FTC Act claim to any of the facts in the complaint." *Id.* at 1098. Here, Plaintiffs do even less, merely mentioning the FTC Act for the first time in their Opposition, unsupported by any allegations, much less "allegations of deceptive conduct" that satisfy "Rule 9(b)'s heightened pleading requirements." *Id.* Plaintiffs find no support in their citations to *FTC v. Neovi, Inc.*, 604 F.3d 1150 (9th Cir. 2010) and *Gilbert v. MoneyMutual, LLC*, 318 F.R.D. 614 (N.D. Cal. 2016). In *Neovi*, an FTC Act violation was actually alleged against a defendant purported to have created

and delivered fraudulent checks, not asserted for the first time in a few sentences in an opposition. 604 F.3d at 1155. And *Gilbert* did not even involve the FTC Act. 318 F.R.D. at 622-624.

*Second*, Plaintiffs' UCL claim under the "fraudulent" prong fails because they do not plausibly allege any actionable misrepresentation, reliance, or particularized fraud. Mot. 16-17. Rather than respond to these arguments, Plaintiffs now assert they "do not rely on the WhatsApp chat contents," Opp. 11, but the AC's allegations on the "fraudulent" prong rely exclusively on those third-party communications. Specifically, the AC alleges "Meta's creation and optimization of imposter professional endorsements and scripted WhatsApp funnels were likely to deceive reasonable consumers by falsely representing that real, licensed financial professionals sponsored or approved the promoted securities." AC ¶¶ 102-103. Plaintiffs abandon this theory and concede they fail to satisfy Rule 9(b) or plead actual reliance based on these communications. Mot. 16-17.

Plaintiffs again pivot to a new theory: that the "fraudulent" prong is based on the statements underlying their contract claim. That unpled theory cannot salvage their claim. It appears only in their Opposition and thus cannot satisfy Rule 9(b)'s requirement that any alleged misrepresentation be pled with particularity in the pleading itself. *See Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 552 (N.D. Cal. 2019); Fed. R. Civ. P. 9(b). And none of these statements can plausibly be read as Meta representing it would prevent any content from appearing. *See infra* pp.11-12.

*Third*, Plaintiffs' "unfair" prong repackages the same deficient theories. Although they describe the prong as "independently tethered," it rests on the same alleged misconduct and statutory predicates as the other prongs. Opp. 12. Plaintiffs do not dispute that an "unfair" prong claim fails where it entirely overlaps with deficient unlawful and fraudulent claims. Mot. 17.

### D.    Plaintiffs Do Not Plausibly Allege A FDUTPA Violation (Count VII)

Plaintiffs' FDUTPA claim should be dismissed for three independent reasons. *First*, California law applies. Plaintiffs do not dispute that "California's substantive law applies to the claims of Plaintiffs and the Class." Mot. 17. And Plaintiffs acknowledge they "do not press the FDUTPA claim as a primary ground for relief" and request dismissal if California law governs. Opp. 17 n.3. That concession alone warrants dismissal of this claim. Mot. 17-18.

*Second,* the FDUTPA claim independently fails because it rests solely on the same non-

actionable theory underlying the contract claim (as well as, for the first time in their Opposition, their UCL claim): the idea that Meta "promise[d] to remove exactly the content that harmed them." Opp. 17. As explained *infra* pp.11-12, they do not plausibly allege any such representation.

*Third*, Plaintiffs do not plead "actual damages" as FDUTPA requires. Plaintiffs contend the market-value differential test articulated in *Marrache v. Bacardi U.S.A. Inc.*, 17 F.4th 1084, 1098 (11th Cir. 2021) is limited to "consumer product defect claims," Opp. 17. Not so. Nothing in *Marrache* so limits that rule, and Plaintiffs identify no authority creating any such carve-out. Opp. 17-18. Indeed, Plaintiffs rely on *Rodriguez v. Recovery Performance & Marine, LLC*, but that case applies the same market-value rule and *rejects* consequential damages. 38 So. 3d 178, 180 (Fla. Dist. Ct. App. 2010). Plaintiffs thus do not dispute that consequential and speculative damages are not cognizable under FDUTPA, *see* Mot. 19, but allege only consequential and speculative harms—like loss of goodwill, diverted business opportunities, and mitigation costs. AC ¶ 151; Opp. 24-25. They accordingly fail to allege cognizable damages under FDUTPA.

### E.   Plaintiffs Do Not Plausibly Allege Breach Of Contract (Count VI)

Plaintiffs' Opposition narrows their contract claim to a single statement in Meta's Transparency Center: "If your content goes against the Community Standards, Meta will remove it." Opp. 18. To start, their argument that this webpage in the Transparency Center is incorporated into Meta's Terms makes no sense. They argue the Terms "reference[] the Community Standards," but never tie this Transparency Center page to either the Terms or the Community Standards. *Id.* at 18-19. Plus, in an attempt to save their negligence claim from the economic loss rule, Plaintiffs concede this page is *not* part of the contract between the parties. *See infra* p.14.

Even assuming this "will remove" statement were incorporated, it would not establish an enforceable obligation. *Bouck* rejected that position. There the plaintiffs argued that "elsewhere in the ToS, Meta states in no uncertain terms that it *will* take action against violating content." 2026 WL 810036, at *8. But this Court held "[t]hose admonitions are also not enforceable contractual promises …. [T]hey announce an enforcement mechanism to ensure that Meta's users comply with *their* binding contractual obligations." *Id.* And in any event, the language would have to be read as part of Meta's Terms "as a whole." *See, e.g.*, *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th

1, 18 (1995). Those Terms "grant Meta rights against infringing conduct, not specific responsibilities to take any particular action." *Suddeth*, 2026 WL 810252, at *4; Mot. 19-20.

As for Meta's express disclaimer regarding third-party content, Plaintiffs ignore cases holding that it precludes any plausible allegation of an enforceable promise to prevent or remove third-party content. Mot. 21 (collecting cases); *Isgur v. Meta Platforms, Inc.*, 2026 WL 194640, at *6 (N.D. Cal. Jan. 26, 2026) (attempts "to allege that Meta is liable under its TOS for (1) any third-party … behavior or (2) responsible for immediately remedying third party behavior… are not actionable"). Plaintiffs again contest this disclaimer solely on the basis that a party may not exempt itself from liability for its own misconduct, Opp. 19-20, which the disclaimer at issue here does not even purport to do. It disclaims responsibility only for the misconduct of others. Mot. 21.

Plaintiffs cannot rely on an implied covenant. Opp. 20. They do not dispute that the covenant "cannot be extended to create obligations not contemplated by the contract." *Kroetch v. BAC Home Loan Servs.*, 2011 WL 4502350, at *3 (N.D. Cal. Sept. 27, 2011). Because they have not plausibly alleged any such promise, there is no duty for the covenant to enforce. As in *Bouck*, Plaintiffs seek "*to create new promises*. That the covenant cannot do." 2026 WL 810036, at *8.

Finally, Plaintiffs' unalleged theory that they are third-party beneficiaries to Meta's Terms, Opp. 19, is contrary to the Terms themselves, which expressly provide that they "do not confer any third-party beneficiary rights." Dkt. 29-4 at 12 (§ 4.5(5)). "[T]he Ninth Circuit has held that a 'No Third Party Beneficiaries' clause 'unambiguously manifests an intent not to create any obligations to third parties.'" *In re Acellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 647 (N.D. Cal. 2024) (quoting *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1163 (9th Cir. 2010)).

## F.    Plaintiffs Do Not Plausibly Allege Negligence (Count VIII)

Rather than defend their negligence claim as alleged, Plaintiffs again pivot to an unalleged theory to try to save a deficient claim. Even if the Court considers their unalleged assertions raised for the first time in their Opposition, Plaintiffs still fall short.

### 1.    Plaintiffs do not plausibly allege the element of duty

Plaintiffs assert a "misfeasance theory" of negligence they never alleged. They claim Meta "conflates duty with breach" when it argues the AC alleges only a duty-to-warn claim. Opp. 21.

But the AC supports Meta's position; it repeatedly characterizes the *duty* as a "duty to warn." AC ¶¶ 166, 168; *see also id.* ¶ 165 ("duty to disclose to, or warn"); *id.* ¶ 172 ("failure to warn"). And it alleges that Meta "breached [its] *duty* … by failing to make *any disclosure or warning*." *Id.* ¶ 171. The only negligence theory the AC alleges is a duty-to-warn theory, and it is meritless.

Plaintiffs do not respond to case law holding that failure-to-warn claims are definitionally nonfeasance claims. Mot. 22. Such claims require Plaintiffs to allege Meta had a "special relationship" with them or the scammers, *id.* at 22-23, which Plaintiffs concede they do not allege, Opp. 20-22. *See also* Mot. 23 (cases declining to find website-user "special relationships").

Instead, Plaintiffs argue their duty-to-warn claim falls into the framework of *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016). But that framework addresses only whether Section 230 bars a failure-to-warn claim—not whether the duty exists at all. *Doe* recognized that the defendant could still "contest the scope of the duty to warn" and "in particular, the existence of the required special relationship," regardless of Section 230. *Id.* at 850. Plaintiffs do not even attempt to allege the required special relationship; that ends the inquiry.

Plaintiffs pivot again to unalleged theories. *First*, they claim to have alleged misfeasance because Meta's ad tools supposedly "generated the professional-credentialing architecture that made the PTHL scheme credible." Opp. 21. That argument rehashes Plaintiffs' unsupported arguments on material contribution and fails for the same reasons. *Supra* pp.2-5. *Second*, they argue the "will remove" language was a "voluntary undertaking" to protect Plaintiffs from harmful third-party conduct. That argument rehashes Plaintiffs' contract arguments, and again fails for the same reasons. *Supra* pp.11-12. Plus, a voluntary-undertaking claim is available only for physical injury or property damage, not the purely economic and reputational harms alleged here. *See Lichtman v. Siemens Indus. Inc.*, 16 Cal. App. 5th 914, 922 (2017) (324A's "negligent undertaking theory … applies to personal injury and property damage claims, but not to claims seeking only economic loss."); *Dent v. Nat'l Football League*, 968 F.3d 1126, 1133 (9th Cir. 2020) (similar).

### 2.    Plaintiffs do not plausibly allege proximate cause

Plaintiffs also fail to plausibly allege proximate cause. They contend that, had Meta warned Plaintiffs about investment scams, Plaintiffs could have mitigated their harm through customer

notifications, litigation, and regulatory action. Opp. 23 (citing AC ¶ 7). But that contention is unsupported by the AC, which alleges only in conclusory terms that Plaintiffs "would have taken additional protective measures—or demanded platform-level protections." AC ¶ 7. And even if the Court considered the unalleged assertions in the Opposition, it is not enough, *contra* Plaintiffs, to merely allege Plaintiffs "would have acted differently." Opp. 23 (quoting *Holley v. Gilead Scis., Inc.*, 379 F. Supp. 3d 809, 830 (N.D. Cal. 2019)). They must still explain how their different actions would have prevented scammers from creating the WhatsApp groups or impersonating Plaintiffs—the actions that caused the harm. As *Holley* explains, Plaintiffs must "allege a plausible causal link between [the] alleged failure to warn and Plaintiffs' alleged injuries." 379 F. Supp. 3d at 831-832.[4]

### 3.    Plaintiffs' negligence claim is barred by the economic loss rule

Finally, the economic loss rule independently bars Plaintiffs' negligence claim. Plaintiffs do not dispute they seek recovery only for economic harms nor that they are in contractual privity with Meta. Mot. 24. Instead, they challenge the economic loss rule on two deficient bases.

*First*, Plaintiffs claim their unalleged misfeasance negligence claim—*not* the duty-to-warn claim they actually alleged—is independent of their contract claim. They contradictorily construe the supposed "'will remove' promise"—the only basis on which they defend their contract claim—as a "pre-contractual representation[]" made before any contractual relationship existed. Opp. 24. They even describe the "will remove" language as "[a] duty no contract addresses." *Id.* Plaintiffs cannot have it both ways; they cannot rely on the "will remove" language for their contract claim *and* claim that it is not addressed by contract. Instead, the obvious conclusion is their newly found negligence theory is *the same as*—not independent of—their contract theory. Plus, Plaintiffs do not dispute that their negligence claim would impose obligations *contrary* to Meta's express disclaimer of any contractual obligation to monitor and take responsibility for third-party conduct. Because Plaintiffs' negligence claim is not independent of their contract claim, it is barred by the economic loss rule. *See Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022).

*Second*, Plaintiffs argue the economic loss rule is inapplicable to negligent misrepresentation claims. Opp. 24. But they do not allege a negligent misrepresentation claim.

---

[4] Plaintiffs respond to a "superseding-cause argument" that Meta never asserted. Opp. 23-24.

Even their unalleged theories do not assert the distinct tort of negligent misrepresentation. The authorities Plaintiffs cite in support of this argument are thus irrelevant to this case.

### G.    Plaintiffs Do Not Plausibly Allege Unjust Enrichment (Count V)

Plaintiffs' unjust enrichment theory remains derivative of their other, deficient claims. *See* AC ¶ 133. "Because none of their asserted legal violations" survives, "their claim for unjust enrichment fails as well." *Suddeth*, 2026 WL 810252, at \*5.

The claim also fails because Plaintiffs allege—and rely on—an express contract governing the same subject matter. Plaintiffs repeatedly allege they accepted Meta's Terms and base their unjust enrichment theory on alleged violations of those Terms and related policies. AC ¶¶ 133, 139. That forecloses quasi-contract relief. Mot. 25. Plaintiffs incorrectly assert they may bring this claim in the alternative because they have alleged facts suggesting the relevant contract is unenforceable. But they argue only that Meta's Terms are an adhesion contract and that the $100 liability cap is unconscionable. Opp. 24-25. That is not enough. A contract of adhesion is not, without more, unconscionable. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261, 1273 (9th Cir. 2017). And even if they had offered a single allegation about the supposed unconscionability of the liability cap—which Meta does not even rely on in its motion—that says nothing about the enforceability of the rest of the agreement.

## III.    DISMISSAL SHOULD BE WITH PREJUDICE

Plaintiffs request nonprejudicial dismissal because the AC is "not [their] second attempt at the same theory," but instead admittedly removes their prior, fatal admissions that the scammers uploaded the alleged impersonation content so that Plaintiffs can try to allege the opposite. Opp. 25. But that admission cuts against them. When a party could not "advance an alternative set of allegations" without "'directly contradict[ing] an earlier assertion made in the same proceeding,'" "leave to amend would be futile." *Airs Aromatics*, 744 F.3d at 600. More fundamentally, Plaintiffs have again failed to plead that Meta took any action that contributed to the core illegality alleged under any of Plaintiffs' theories (alleged or otherwise): the depiction of Plaintiffs. Plaintiffs have thus repeatedly shown that "[f]urther amendment would simply be a futile exercise." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020). Dismissal should be with prejudice.

Dated: July 13, 2026

Respectfully submitted,

By: */s/ Sonal N. Mehta*

WILMER CUTLER PICKERING
HALE AND DORR LLP
SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
JESSICA LEWIS (SBN 302467)
Jessica.Lewis@wilmerhale.com
LAKSHMI REDDY (SBN 345741)
Lakshmi.Reddy@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

ARI HOLTZBLATT (SBN 354631)
Ari.Holtzblatt@wilmerhale.com
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6443

*Attorneys for Defendants Meta Platforms, Inc.;*
*Instagram, LLC; Facebook Operations, LLC; and*
*WhatsApp, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of July, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System.

*/s/ Sonal N. Mehta*

Sonal N. Mehta